# Exhibit C

# U.S. DEPARTMENT OF EDUCATION

# OFFICE FOR CIVIL RIGHTS



# CASE PROCESSING MANUAL (CPM)

**EFFECTIVE DATE: JULY 18, 2022**

# **INTRODUCTION**

The mission of the Office for Civil Rights (OCR) is to ensure equal access to education and to promote educational excellence throughout the nation through the vigorous enforcement of civil rights.  The Case Processing Manual (CPM) provides OCR with the procedures to promptly and effectively investigate and resolve complaints, compliance reviews, and directed investigations to ensure compliance with the civil rights laws OCR enforces.

# Table of Contents

**INTRODUCTION** ....................................................................................................................2

**ARTICLE I:    EVALUATION**...................................................................................................5

Section 101    Determine What Constitutes a Complaint .............................................................5
Section 102    Assign a Docket Number and Establish a File........................................................6
Section 103    Acknowledge the Correspondence and Obtain Consent if Necessary .....................6
    (a)    Acknowledge the Correspondence .........................................................................6
    (b)    Obtain Consent if Necessary..................................................................................7
Section 104    Determine Subject Matter Jurisdiction...................................................................7
Section 105    Determine Personal Jurisdiction ............................................................................8
Section 106    Determine Whether the Allegation(s) Is Timely.....................................................9
Section 107    Determine Whether a Waiver Should Be Granted ...................................................9
Section 108    Dismissals ..............................................................................................................10
Section 109    Opening Allegations(s) for Investigation................................................................10
Section 110    Determine Whether to Close or Dismiss an Allegation(s)........................................11

**ARTICLE II:    ALTERNATIVE RESOLUTION PROCESSES**.................................................13

Section 201    Mediation ...............................................................................................................13
Section 202    Mediation Process ...................................................................................................14
    (a) OCR's Role .................................................................................................................14
    (b) Role of the Participants...............................................................................................14
    (c) Initiation and Termination of the Mediation Process...................................................14
    (d) Confidentiality of the Mediation Process....................................................................14
    (e) Successful Conclusion of Mediation...........................................................................15
    (f) Material Breach of Mediation Agreements .................................................................15
    (g) Investigative Determination when Mediation is Unsuccessful.....................................15
Section 203    Rapid Resolution Process .......................................................................................15

**ARTICLE III:    CASE PLANNING, INVESTIGATION, AND RESOLUTION**.......................16

Section 301    Case Planning.........................................................................................................16
Section 302    Resolution Agreement Reached During an Investigation.........................................16
    (a) Statement of the Case.................................................................................................17
    (b) Timeframes and Procedures for Negotiations..............................................................17
    (c) Resolution Letters......................................................................................................17
Section 303    Investigative Determinations ..................................................................................18
    (a) Insufficient Evidence Determination ..........................................................................18
    (b) Non-Compliance Determination.................................................................................18
    (c) Mixed Determination.................................................................................................18
    (d) Statement of the Case ................................................................................................19
    (e) Letter of Findings......................................................................................................19
    (f) Timeframes and Procedures for Negotiations..............................................................20
    (g) Negotiation Impasse..................................................................................................20
Section 304    Contents of Resolution Agreements ........................................................................20
Section 305    Letter of Impending Enforcement Action ...............................................................21
Section 306    Referrals from the Department of Justice and the Equal Employment Opportunity
    Commission ...........................................................................................................21

**ARTICLE IV:   COMPLIANCE REVIEWS AND DIRECTED INVESTIGATIONS.............................21**

Section 401      Compliance Reviews ...................................................................................21
Section 402      Directed Investigations .............................................................................22

**ARTICLE V:      MONITORING RESOLUTION AGREEMENTS ....................................22**

Section 501      Responding to Monitoring Reports and Verifying Recipient's Compliance .........................22
Section 502      Implementation Problems ..........................................................................22
Section 503      Modification of Agreements ......................................................................22
    (a) Changed Circumstances Affecting Agreements ...................................................22
    (b) New Compliance Issues ......................................................................................23
    (c) Approval of Modifications ..................................................................................23
Section 504      Conclusion of Monitoring .........................................................................23

**ARTICLE VI:     INITIATION OF ENFORCEMENT ACTION ......................................23**

Section 601      Administrative Proceedings ......................................................................23
Section 602      Referral to DOJ .........................................................................................23
Section 603      Enforcement for Denial of Access .............................................................23
Section 604      Enforcement for Failure to Comply with OCR Agreement ..........................24

**ARTICLE VII: APPENDICES ............................................................................................24**

Section 701      Special Intake Procedures ........................................................................24
    (a) Age Discrimination Complaints ..........................................................................24
        1.       Employment Complaints ..........................................................................25
        2.       Service Complaints .................................................................................25
    (b) Title VI Complaints against Proprietary Schools ................................................25
    (c) Title VI and Title IX Employment Complaints (see 29 C.F.R. §§ 1691.1 – 1691.13 and 28 C.F.R.
        §§ 42.601 – 42.613) ............................................................................................26
    (d) Title II ADA Complaints (Other than Employment) (see 28 C.F.R. § 35.171(a)(2)(i)) ......................27
    (e) Title II ADA Complaints (Employment) (see 28 C.F.R. § 35.171(b)) .....................27
        1.       Referral or Deferral .................................................................................27
        2.       Retention .................................................................................................27
Section 702      Data Collection and Information Gathering ...............................................27
    (a) Generally ............................................................................................................28
    (b) OCR's Authority to Obtain Information ...............................................................28
    (c) Requests for Records ..........................................................................................28
        1.       Data Requests ..........................................................................................28
        2.       Timeframes for Recipient's Response .....................................................28
        3.       Data Provided by Recipient .....................................................................28
        4.       Data Provided by Recipient .....................................................................29
    (d) Interviews ..........................................................................................................29
        1.       Introduction .............................................................................................29
        2.       Notice .......................................................................................................29
        3.       Privacy .....................................................................................................30
        4.       Interviews with Minors (Persons under 18) or Legally Incompetent Individuals .....................30
        5.       Records of Interviews ..............................................................................30
Section 703      Freedom of Information Act and Privacy Act ...........................................31
Section 704      Recipients Operating Under Federal Court Order .....................................32
    (a) When the United States is a Party to the Court Order ..........................................32
    (b) When the United States is Not a Party to the Court Order....................................32

# ARTICLE I:   EVALUATION

When OCR determines that written information provided to the U.S. Department of Education (Department) is a complaint, OCR will establish whether it has sufficient information to proceed to investigation.  OCR will provide complainants with assistance regarding the nature of their rights and of the OCR investigation process. Additionally, OCR will provide appropriate assistance to complainants who are persons with disabilities, individuals of limited English proficiency, and persons whose communication skills are otherwise limited.

To investigate a complaint, OCR may collect and analyze personal information.  The Privacy Act of 1974, as amended 5 U.S.C. § 552a (Privacy Act) and the Department's Privacy Act regulations at 34 C.F.R. Part 5b, section 444 of the General Education Provisions Act (commonly referred to as the Family Educational Rights and Privacy Act (FERPA)), 20 U.S.C. § 1232g and FERPA's implementing regulations at 34 C.F.R. Part 99, and the Freedom of Information Act (FOIA), 5 U.S.C. § 552 and FOIA's implementing regulations at 34 C.F.R. Part 5, may apply to the personal information collected by OCR and, where applicable, govern its disclosure.  OCR does not reveal the name or other personal information about an individual unless: (1) such information is necessary for the completion of an investigation or in enforcement activities against a school or institution that violates the laws and regulations enforced by OCR; (2) such information is required to be disclosed by law; or (3) such information is permitted to be disclosed under the Privacy Act and FERPA, as applicable.  Disclosure will only be made as consistent with the Privacy Act, FERPA, and FOIA.

In addition, subject to the restrictions imposed by FOIA and the Privacy Act, OCR can release certain information about a complaint to the press or general public, including the name of the school or institution that is the subject of the complaint; the date the complaint was filed; the type of discrimination included in a complaint; the date a complaint was resolved; the reasons for OCR's decision; or other related information. Any information OCR releases to the press or general public will not include the complainant's name or the name of the person(s) on whose behalf the complaint was filed except as noted in the paragraph above.

All information within case files is subject to FOIA and the Privacy Act.  See section 703 for additional information about FOIA and the Privacy Act.

## SECTION 101   DETERMINE WHAT CONSTITUTES A COMPLAINT

A complaint is a written statement to the Department alleging that the rights of one or more persons have been violated and requesting that the Department take action.  Complainants must also provide their contact information.  Complaints may be filed online as well as by mail, fax, or in person.  Some correspondence that OCR receives, even if it concerns an alleged civil rights violation, may not be a complaint.  Upon receipt, OCR will determine whether the correspondence is a complaint.

The following are not complaints:

- Oral allegations that are not reduced to writing.
- Anonymous correspondence.
- Courtesy copies of correspondence or a complaint filed with or otherwise submitted to another person or other entity.
- Inquiries that seek advice or information but do not seek action or intervention from the Department.

The complaint should include a written explanation of what happened; identification of the person(s) or group injured by the alleged discrimination; and identification of the school or institution alleged to have discriminated.

Return to Table of Contents

Generally, statistical data alone are not sufficient to warrant opening an investigation but can serve to support the opening of an investigation when presented in conjunction with other facts and circumstances.

### SECTION 102   ASSIGN A DOCKET NUMBER AND ESTABLISH A FILE

OCR's complaint processing commences on the date that correspondence is received by the appropriate OCR Regional Office. Correspondence received by e-mail or by fax over a weekend, or on a holiday will be considered received on the next workday. Upon receipt by the appropriate Regional Office, OCR assigns the incoming correspondence a docket number. OCR establishes a case file for each complaint. The complaint, however it was filed, must be included in the case file.

In cases of multiple complaints, the following guidelines will be applied in determining how many docket numbers should be assigned:

- When OCR receives multiple identical complaints filed at the same time by the same complainant against *the same* recipient, OCR will assign one docket number to the complaints.
- When OCR receives multiple identical complaints filed at the same time by the same complainant against *multiple* recipients, OCR will assign a separate docket number to each recipient[1] named in the complaint. If, during the course of the investigation, OCR determines that other recipients are involved in the alleged acts of discrimination, OCR will open separate complaints and assign a separate docket number for each such recipient; the case opening date for such complaints is the date on which OCR determines that other recipients are involved.
- Complaints from more than one person against the same recipient that contain different or distinct allegations are treated as separate complaints and assigned separate docket numbers.
- Complaints filed by one or more than one person that raise substantially identical allegations against the same recipient may be treated as one complaint and assigned one docket number when OCR makes this determination prior to the docketing of the new complaint(s). When OCR is currently investigating a complaint(s) against the same recipient, a complaint(s) that is filed subsequently and that raises substantially identical allegations will be assigned a separate docket number(s) and reviewed to determine whether to consolidate the investigation of the subsequently filed complaint(s) with the existing investigation.
- New complaint allegations filed by the same person against the same recipient after OCR has begun to investigate the original complaint are reviewed on a case-by-case basis to determine whether the allegations should be added to the open complaint or treated as a new complaint and assigned a separate docket number and, if treated as a new complaint, whether to consolidate the investigation of the subsequently filed complaint allegation(s) with the investigation of the allegation(s) in the original complaint.

### SECTION 103   ACKNOWLEDGE THE CORRESPONDENCE AND OBTAIN CONSENT IF NECESSARY

**(a) Acknowledge the Correspondence**

---

[1] This manual uses the term "recipient" throughout. With respect to Title VI, Title IX, Section 504 and the Age Discrimination Act, a recipient is an entity that receives federal financial assistance from the Department. With respect to the Boy Scouts of America Equal Access Act, a recipient is a public elementary or secondary school or local or State educational agency that receives funds made available through the Department and with respect to Title II, the term is intended to include public entities whether or not they receive federal financial assistance. Specifically, the Department of Justice has identified the Department of Education as the designated agency to carry out Title II compliance activities regarding public elementary and secondary education systems and institutions, public institutions of higher education and vocational education (other than schools of medicine, dentistry, nursing, and other health-related schools) and public libraries.

OCR will promptly acknowledge receipt of the correspondence. The complainant will be informed that the correspondence will be evaluated to determine whether OCR has authority to investigate the allegations and that further communications about the complaint will be forthcoming. Consent Forms, Complaint Forms, and OCR Complaint Processing Procedures are available at: ([https://www2.ed.gov/about/offices/list/ocr/complaintform.pdf](https://www2.ed.gov/about/offices/list/ocr/complaintform.pdf)).

**(b) Obtain Consent if Necessary**

When it is necessary to disclose the identity of the complainant to the recipient and witnesses in order to resolve the allegation(s), OCR will require written consent before proceeding. The complainant will be informed that the allegation(s) will be dismissed if written consent is necessary in order to resolve the allegation(s) and is not received within 20 calendar days of the date that OCR requests the Consent Form from the complainant. The signed Consent Form may be submitted to OCR by mail, fax, e-mail or in person.

When OCR has determined that consent is necessary in order to resolve the allegation(s) and OCR has not received a signed Consent Form by the 15th calendar day from the date of the acknowledgment letter or the date the Consent Form is requested from the complainant, OCR will contact the complainant by phone or email to inform the complainant that the allegation(s) will be dismissed if the signed Consent Form is not received within 5 calendar days. If OCR does not receive a signed Consent Form, OCR will dismiss the allegation(s) pursuant to subsection 108(e) and will inform the complainant in writing.

A complainant filing on behalf of or pertaining to another person is responsible for securing any necessary written consent from that individual, including when a parent files for a student over the age of 18 or one who becomes 18 while the allegation(s) is under investigation or in monitoring. Where the person is an individual who has been declared to be incompetent due to physical or mental incapacity or age by a court of competent jurisdiction, the Consent Form must be signed by that person's parent or legal guardian. Parental or legal guardian consent may not be required for persons under the age of 18 if they are emancipated under state law or, in the context of Section 504, whose IDEA rights have transferred under 20 USC § 1415(m) and are therefore considered to have obtained majority. Proof of transfer for IDEA rights, emancipation, incompetence, and/or legal guardianship must be provided if requested by OCR.

**SECTION 104    DETERMINE SUBJECT MATTER JURISDICTION**

OCR must have jurisdiction over the subject matter of the allegation(s). An allegation(s) over which OCR lacks subject matter jurisdiction is not subject to further processing and will be dismissed pursuant to subsection 108(a).

For OCR to establish subject matter jurisdiction, the written information must allege, or OCR must be able to infer from the facts provided, an allegation of: (1) discrimination based on race, color, national origin, sex, disability, or age, (2) discrimination in violation of the Boy Scouts of America Equal Access Act of 2001, or (3) retaliation for the purpose of interfering with any right or privilege secured by the civil rights laws and regulations enforced by OCR, or as a result of making a complaint, testifying, or participating in any manner in an OCR proceeding. *See* 34 C.F.R. §§ 100.7(e), 104.61, 106.81, 108.9, 110.34; and 28 C.F.R. § 35.134.

OCR has jurisdiction pursuant to the following statutory and regulatory authorities:

- **Title VI of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000d et seq., 34 C.F.R. Part 100.
  Under Title VI, OCR has jurisdiction to investigate allegations that involve discrimination in a recipient's education program or activity, including applicants, students, and parents, as well as certain employment complaints, based on race, color, or national origin. With respect to employment, OCR has jurisdiction if: (1) the alleged discrimination could adversely affect program beneficiaries

on the basis of race, color, or national origin, or (2) a primary objective of the federal financial assistance is to provide employment.  See subsection 701(b) for processing Title VI allegations with respect to proprietary vocational schools.  For employment allegations, OCR follows procedures consistent with the employment coordinating regulations at 28 C.F.R. Part 42 and 29 C.F.R. Part 1691.  See subsection 701(c).

- **Title IX of the Education Amendments of 1972**, as amended, 20 U.S.C. §§ 1681 et seq., 34 C.F.R. Part 106.  Under Title IX, OCR has jurisdiction to investigate allegations that involve individuals who allege discrimination on the basis of sex in a recipient's education program or activity, including allegations filed by applicants, students, parents, and recipient employees.  For employment allegations, OCR follows procedures consistent with the employment coordinating regulations at 28 C.F.R. Part 42 and 29 C.F.R. Part 1691.  See subsection 701(c).

- **Section 504 of the Rehabilitation Act of 1973**, as amended, 29 U.S.C. § 794, 34 C.F.R. Part 104.  Under Section 504, OCR has jurisdiction to investigate allegations that involve individuals who allege discrimination in a recipient's education program or activity, including applicants, students, and parents, as well as employment allegations based on disability.  For employment allegations, OCR follows procedures consistent with the employment coordination regulations at 28 C.F.R. Part 37 and 29 C.F.R. Part 1640.  See subsection 701(e).

- **Age Discrimination Act of 1975**, 42 U.S.C. §§ 6101 et seq., 34 C.F.R. Part 110.  Under the Age Discrimination Act, OCR has jurisdiction to investigate allegations that involve individuals who allege discrimination in a recipient's program or activity, including applicants, students, and parents.  For instructions regarding the referral of allegations to the Federal Mediation and Conciliation Service (FMCS) before investigation, see subsection 701(a).  OCR does not have jurisdiction over employment under the Age Discrimination Act.  See subsection 701(a).

- **Title II of the Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12131 et seq., 28 C.F.R. Part 35.  Under Title II, OCR has jurisdiction to investigate allegations that involve individuals who allege discrimination in a recipient's education program or activity, including applicants, students, and parents, as well as employment allegations based on disability.  For employment allegations, OCR follows procedures consistent with the employment coordination regulations at 28 C.F.R. Part 37 and 29 C.F.R. Part 1640, which address coordinating disability employment allegations with the Department of Justice (DOJ) and the Equal Employment Opportunity Commission (EEOC).  See subsection 701(e).

- **Boy Scouts of America Equal Access Act of 2001**, 20 U.S.C. 7905, 34 C.F.R. Part 108.  Under the Boy Scouts Act, OCR has jurisdiction to investigate allegations that involve the denial of equal access or a fair opportunity to meet to, or discrimination against, any group officially affiliated with the Boy Scouts of America or officially affiliated with any other youth group listed in Title 36 of the United States Code.

## SECTION 105   DETERMINE PERSONAL JURISDICTION

OCR must have jurisdiction over the school or institution alleged to have discriminated.  An allegation against a school or institution over which OCR lacks personal jurisdiction is not subject to further processing and will be dismissed pursuant to subsection 108(b).

Under Title VI, Title IX, Section 504, and the Age Discrimination Act, OCR has jurisdiction over schools and institutions that receive federal financial assistance from the Department and schools and institutions for which OCR has been delegated authority from other federal agencies.  Under Title II, OCR has jurisdiction over public elementary and secondary education systems and institutions, public institutions of higher education and

Return to Table of Contents

vocational education (other than schools of medicine, dentistry, nursing, and other health-related schools), and public libraries – regardless of whether these schools or institutions receive federal financial assistance.  Under the Boy Scouts Act, OCR has jurisdiction over public elementary schools, public secondary schools, local educational agencies, and State educational agencies that receive funds made available through the Department.  When appropriate, OCR will refer the complaint to the appropriate agency.  See section 701.

## SECTION 106    DETERMINE WHETHER THE ALLEGATION(S) IS TIMELY

OCR will take action only with respect to those allegation(s) (except allegation(s) of age discrimination and, in special circumstances, allegation(s) relating to breach of agreements reached through mediation) that have been filed within 180 calendar days of the date of the alleged discrimination, unless the complainant is granted a waiver under section 107.  With respect to allegation(s) of age discrimination, OCR will take action if they have been filed within 180 calendar days of the date the complainant first had knowledge of the alleged discrimination.  OCR may extend this time limit for an age discrimination allegation(s) for good cause shown.  See subsection 701(a).  With respect to the timeliness requirements for allegation(s) relating to the breach of agreements reached through mediation, see subsection 202(f).

The filing date of an allegation(s), for the purpose of determining timeliness, is the following:

- For an allegation(s) contained in a complaint that was submitted online, by e-mail, or by fax, the date the complaint was received by OCR.  The filing date of an allegation(s) submitted by mail is the date the complaint containing the allegation is postmarked.
- For a Title II allegation(s) referred from DOJ, the filing date is the date the complaint containing the allegation(s) was received by DOJ.

Timely allegations may include those where OCR determines that the complainant has alleged a continuing violation and/or a pattern or practice of discrimination.

## SECTION 107    DETERMINE WHETHER A WAIVER SHOULD BE GRANTED

If an allegation(s) is not filed in a timely manner, OCR will notify the complainant of the opportunity to request a waiver.  OCR may grant a waiver of the 180-day filing requirement for reasons such as:

(a) The complainant could not reasonably be expected to know the act was discriminatory within the 180-day period, and the allegation(s) was filed within 60 days after the complainant became aware of the alleged discrimination (note that lack of previous awareness of OCR or the civil rights laws enforced by OCR is not a basis for a waiver).

(b) The complainant was unable to file the allegation(s) because of incapacitating illness or other incapacitating circumstances during the 180-day period, and the allegation(s) was filed within 60 days after the period of incapacitation ended.

(c) The complainant filed a complaint alleging the same discriminatory conduct within the 180-day period with another federal, state, or local civil rights enforcement agency, or federal or state court, and filed the complaint with OCR within 60 days after the other agency had completed its investigation or, in the case of a court, there had been no decision on the merits or settlement of the complaint allegations.  Dismissal with prejudice is considered a decision on the merits.

(d) The complainant filed, within the 180-day period, an internal grievance with the recipient of federal financial assistance, or a due process hearing, alleging the same discriminatory conduct that is the subject of the OCR complaint, and the complaint is filed with OCR no later than 60 days after the internal grievance is concluded.

(e) Unique circumstances generated by OCR's action have adversely affected the complainant.

Return to Table of Contents

When a waiver is not requested or requested but not granted, OCR will dismiss the allegation(s) pursuant to subsection 108(c) and will issue a letter to the complainant explaining the reason for the dismissal.

## SECTION 108    DISMISSALS

OCR will assist the complainant in understanding the information that OCR requires to proceed to investigation of the complainant's allegation(s). This will include explaining OCR's investigation process and the rights of the complainant under the statutes and regulations enforced by OCR. OCR will also specifically identify the information necessary for OCR to proceed to investigation. OCR staff will provide appropriate assistance to complainants who are persons with disabilities, individuals of limited English proficiency, or persons whose communication skills are otherwise limited.

OCR will dismiss an allegation(s) for the following reasons[2]:

(a) OCR lacks jurisdiction over the subject matter of the allegation(s).
(b) OCR lacks jurisdiction over the entity alleged to have discriminated. When appropriate, OCR will refer the allegation(s) to the agency with jurisdiction.
(c) The allegation(s) was not timely filed, and a waiver was not requested or was requested but not granted pursuant to section 107.
(d) The allegation(s) lacks sufficient detail (i.e., who, what, where, when, or how) for OCR to infer that discrimination or retaliation may have occurred or is occurring.
(e) A signed consent form is required to proceed with an investigation and the consent form has not been provided.
(f) The allegation(s), on its face or as clarified, fails to state a violation of one of the laws or regulations that OCR enforces.

Before dismissing an allegation(s) under subsection 108(d), OCR will contact the complainant to provide appropriate assistance by explaining by phone, letter, or e-mail the information necessary for OCR to open an investigation of the allegation(s), ask the complainant to provide this information to OCR within 20 calendar days of the date of the request, and advise the complainant that OCR will dismiss the allegation(s) if the information is not received by that date. OCR will dismiss the allegation(s) if the requested information is not received within 20 calendar days of the date of the request.

When OCR dismisses an allegation(s), it will issue a dismissal letter to the complainant explaining the reason(s) for the dismissal.

## SECTION 109    OPENING ALLEGATION(S) FOR INVESTIGATION

When OCR opens an allegation(s) for investigation, it will issue letters of notification to the complainant and the recipient that contain the following information:

- OCR's jurisdiction with applicable statutory and regulatory citations.
- The allegation(s) OCR will investigate.
- A statement that OCR is a neutral factfinder.
- Information about OCR's mediation process.
- Contact information for the OCR staff person who will serve as the complainant's and the recipient's primary contact during the investigation and resolution of the allegation(s).

---

[2]When during evaluation OCR determines that a provision set forth in section 110 has been met, the allegation(s) will be dismissed.

A copy of "OCR Complaint Processing Procedures" will be included with the letter to the recipient.

## SECTION 110    DETERMINE WHETHER TO CLOSE OR DISMISS AN ALLEGATION(S)

Generally, section 110 is applied to close allegation(s) during an investigation.

Where OCR has obtained sufficient evidence to support a finding under subsection 303(a) (insufficient evidence) and/or 303(b) (violation), OCR will not close or dismiss the allegation(s) but will proceed in accordance with the appropriate provisions set forth in section 303.  When OCR closes or dismisses an allegation(s) for any of the reasons identified in this section, it will issue letters to the parties, as appropriate, explaining the reason(s) for the closure or dismissal.

OCR *will* close or dismiss an allegation(s) for the following reasons:

(a)  The same allegation has been filed by the complainant against the same recipient with another federal, state, or local civil rights enforcement agency or through a recipient's internal grievance procedures, including due process proceedings, *and*

1.  ***Where the allegation(s) filed with OCR is currently pending before another federal, state, or local civil rights enforcement agency or through a recipient's internal grievance procedures, including due process proceedings,*** and OCR anticipates that the allegation(s) will be investigated, the remedy obtained will be the same as the remedy that would be obtained if OCR were to find a violation regarding the allegation(s), and that there will be a comparable resolution process under comparable legal standards.  OCR will advise the complainant that they may re-file within 60 days of the completion of the other entity's action.  Generally, OCR will not conduct its own investigation; instead, OCR reviews the results of the other entity's determination and decides whether the other entity provided a comparable resolution process in which it applied comparable legal standards.

2.  ***Where the allegation(s) filed with OCR has been resolved by another federal, state, or local civil rights enforcement agency or through a recipient's internal grievance procedures, including due process proceedings,*** and the allegation(s) was investigated, any remedy obtained is the same as the remedy that would be obtained if OCR were to find a violation regarding the allegation(s),and there was a comparable resolution process in which it applied comparable legal standards.

(b)  The same allegation(s) has been filed by the complainant against the same recipient with a state or federal court.  An allegation(s) may be re-filed with OCR within 60 days following the termination of the court proceeding if there has been no decision on the merits or settlement of the allegation(s). Dismissal with prejudice is considered a decision on the merits.[3]  Where an allegation(s) being investigated by OCR is not before the court, OCR will not close or dismiss the allegation(s) but will proceed in accordance with the appropriate provisions set forth in section 303.

(c)  The allegation(s) is foreclosed by previous decisions of the federal courts.

(d)  OCR obtains credible information indicating that the allegation(s) has been resolved, and there is no systemic allegation(s).  In such a case, OCR will attempt to ascertain the apparent resolution.  When

---

[3] The provisions of subsection 110(b) also apply to circumstances where, at the time of the filing of the OCR complaint, the court proceeding was terminated through a decision on the merits or settlement.

OCR determines that the fact(s) underlying the allegation(s) are no longer present and OCR has no evidence the law is violated, it will close the complaint.

OCR *may* close or dismiss an allegation(s) for the following reasons:

(e) OCR determines that its ability to complete the investigation is substantially impaired by the complainant's refusal to provide information that is reasonably accessible to the complainant and is necessary for investigation of the allegation(s). Generally, this subsection does not apply where the investigation raises a systemic issue(s) that warrants continuing the investigation. OCR will include documentation in the case file of its efforts to contact the complainant by phone, in writing, or via e-mail to request the necessary information and of the complainant's refusal to provide the requested information.

(f) OCR determines that its ability to complete the investigation is substantially impaired by its inability to contact the complainant in order to obtain information that is necessary for investigation of the allegation(s). Generally, this subsection does not apply where the investigation raises a systemic issue(s) that warrants continuing the investigation. OCR will include documentation in the case file of its efforts to contact the complainant by phone, in writing, or via e-mail to request the necessary information.

(g) The same allegation(s) has been filed by someone other than the complainant against the same recipient with another federal, state, or local civil rights enforcement agency or through a recipient's internal grievance procedures, including due process proceedings, *and*

   1. ***Where the allegation(s) filed with OCR is currently pending before another federal, state, or local civil rights enforcement agency or through a recipient's internal grievance procedures, including due process proceedings,*** and OCR anticipates that the allegation(s) will be investigated, the remedy obtained will be the same as the remedy that would be obtained if OCR were to find a violation regarding the allegation(s), and that there will be a comparable resolution process under comparable legal standards. OCR will advise the complainant that they may re-file within 60 days of the completion of the other entity's action. Generally, OCR will not conduct its own investigation; instead, OCR reviews the results of the other entity's determination and decides whether the other entity provided a comparable resolution process in which it applied comparable legal standards.

   2. ***Where the allegations filed with OCR have been resolved by another federal, state, or local civil rights enforcement agency or through a recipient's internal grievance procedures, including due process proceedings,*** and the allegation(s) was investigated, any remedy obtained is the same as the remedy that would be obtained if OCR were to find a violation regarding the allegation(s), and there was a comparable resolution process under comparable legal standards.

(h) Where a class action with the same allegation(s) has been filed against the same recipient with state or federal court and the relief sought is the same as would be obtained if OCR were to find a violation regarding the allegation(s). An allegation(s) may be re-filed with OCR within 60 days following termination of the court proceeding if there has been no decision on the merits or settlement of the state or federal allegation(s). Dismissal with prejudice is considered a decision on the merits.[4]

---

[4] The provisions of subsection 110(h) also apply to circumstances where, at the time of the filing of the OCR complaint, the court proceeding was terminated through a decision on the merits or settlement.

Return to Table of Contents

(i) The allegation(s) is a continuation of a pattern of allegations previously filed by the complainant, or someone other than the complainant, that are the same or involve the same issue(s) against the same recipient or against another recipient that have been found to be without merit by OCR.

(j) OCR has recently addressed or is currently addressing the same allegation(s) involving the same recipient in a compliance review, directed investigation or an OCR complaint.

(k) The complainant withdraws the allegation(s) after OCR has opened it for investigation. OCR will determine whether the investigation raises a systemic issue(s) that warrants continuing the investigation, notwithstanding the complainant's withdrawal of the allegation(s).

(l) OCR transfers or refers the allegation(s) to another agency for investigation. See section 701.

(m) The death of the complainant makes it impossible to investigate the allegation(s) fully or forecloses the possibility of individual relief. Generally, this provision does not apply where the investigation raises a systemic issue(s) that warrants continuing investigation or where the allegation(s) involved potential relief beyond that solely for the complainant.

(n) The allegation(s) is moot or unripe.

(o) The mediation that OCR conducted pursuant to subsection 201(a) was unsuccessful.

(p) Where the complaint exclusively alleges a recipient's failure to comply with the requirements of OCR's Civil Rights Data Collection (CRDC), the complaint will be referred to OCR's Program Legal Group, which administers the CRDC.

   Where, in its investigation of a complaint that alleges failure to comply with one or more of the civil rights laws OCR enforces, the Regional Office finds or has concerns that the recipient failed to comply with the requirements of the CRDC, the Regional Office will take appropriate action when resolving the complaint.

## ARTICLE II:   ALTERNATIVE RESOLUTION PROCESSES

### SECTION 201    MEDIATION

OCR offers two mediation options that provide an opportunity for the parties involved to voluntarily resolve the allegation(s). OCR will determine, on an individualized basis, whether the allegation(s) are appropriate for resolution pursuant to the mediation options:

(a) Complainants may request mediation at the time of filing of the complaint. If the allegation(s) is within OCR's jurisdiction, is filed timely (or OCR granted a waiver), provides sufficient detail, states a violation of one of the laws or regulations OCR enforces, and the complainant has provided a signed Consent Form, OCR will contact the recipient and offer this resolution option. If the recipient is interested in mediation, OCR will provide the recipient with a statement of the allegation(s) to be mediated. If the recipient is not interested in mediation, OCR will determine whether to open the complaint for investigation. If the mediation is not successful, OCR will close the original complaint pursuant to subsection 110(o), assign a new docket number to the complaint, and determine whether to open the complaint for investigation.

Return to Table of Contents

(b) If a complainant has not requested mediation but OCR determines during the course of the investigation that a complaint could be appropriate for mediation, OCR will contact the parties and offer this resolution option.

### SECTION 202    MEDIATION PROCESS

The mediation process for both options is as follows:

**(a) OCR's Role**

- To serve as an impartial, confidential mediator between the parties;
- To inform the parties of mediation procedures;
- To establish a constructive tone, and encourage the parties to work expeditiously and in good faith toward a mutually acceptable resolution;
- To review the allegations with the parties and assist both parties in understanding the pertinent legal standards and possible remedies;
- To mediate a discussion between the parties regarding possible actions that the parties may consider in working toward a resolution; and
- To offer assistance, as appropriate, with regard to reducing any resolution to writing.  When an agreement is reached, OCR will inform the parties that OCR will issue a dismissal or closure letter reflecting the resolution of the allegation(s) by agreement of the parties.

**(b) Role of the Participants**

- Participate in the discussions in good faith;
- Consider offers or suggestions with an open mind and work constructively toward a mutually acceptable resolution; and
- Implement any agreement in good faith.

OCR does not sign, approve, endorse, or monitor any mediation agreement reached between the parties.

**(c) Initiation and Termination of the Mediation Process**

If OCR determines that mediation is appropriate and the parties are willing to proceed with this resolution option, OCR will designate staff to mediate an agreement between the parties.  The staff assigned to conduct mediation of an allegation(s) will not be the staff assigned to the evaluation or investigation of the allegation(s).

An Agreement to Participate in Mediation must be reviewed and signed, verbally agreed to, or agreed to by e-mail by the parties.  In circumstances where verbal agreement is obtained, the mediator will send a confirmatory letter or e-mail to the parties.  If an allegation(s) has been opened for investigation, OCR has the discretion to suspend its investigation for up to 30 calendar days to mediate an agreement between the parties. If an agreement is not reached, OCR will immediately resume its evaluation or investigation.

**(d) Confidentiality of the Mediation Process**

A Confidentiality Agreement must be reviewed and signed, verbally agreed to, or agreed to by e-mail by the mediator and the parties to the mediation (the complainant or complainant's representative and the recipient or recipient's representative).  In circumstances where verbal agreement is obtained, the mediator will send a confirmatory letter or e-mail to the parties.

To maintain the integrity of OCR's evaluation or investigation, any notes taken during mediation by the mediator and/or any records or other documents offered by either party to the mediator during mediation will be kept in a separate file and will not be shared with the staff members assigned to investigate the allegation(s).

### (e)  Successful Conclusion of Mediation

At the conclusion of a successful mediation, OCR will obtain a copy of either: (1) a statement signed by the complainant that the allegations have been resolved; or (2) a copy of the agreement that was signed by the parties.  OCR will send the parties closure letters that specify the allegation(s) that have been resolved, and that OCR will address any outstanding allegations through the evaluation, investigation, and resolution process.   A copy of the signed statement from the complainant or the signed agreement between the parties will be attached to the dismissal or closure letter.

### (f)  Material Breach of Mediation Agreements

OCR will not monitor or enforce the agreement but will inform the parties that if a material breach occurs, the complainant has the right to file a new complaint; such new complaint is not subject to dismissal pursuant to

subsection 108(j).  If the complainant files a new complaint, OCR will not address the alleged breach of the agreement.  To be considered timely, the new complaint must be filed either within 180 calendar days of the date of the original allegation(s) of discrimination, or within 60 calendar days of the date that the complainant obtains notice that a breach occurred, whichever date is later.

### (g)  Investigative Determination when Mediation is Unsuccessful

For complaints that are mediated pursuant to subsection 201(b), OCR will ensure that there will be adequate time for completion of the investigation if mediation is unsuccessful.

### SECTION 203   RAPID RESOLUTION PROCESS

The Rapid Resolution Process (RRP) is an expedited process that can be used to resolve allegation(s) in any of OCR's statutory areas, either during evaluation or investigation.  RRP resolutions must meet OCR's standards for legal sufficiency, be consistent with applicable statutory and regulatory authority, and be aligned with the allegation(s) deemed appropriate for resolution.  See Article III.

Once OCR has determined that an allegation(s) is appropriate for RRP, OCR will determine whether the recipient is interested in immediately resolving or has taken action to resolve the allegation(s).

RRP may be used to resolve allegation(s) under the following circumstances:

- Where a recipient has already taken action that will resolve the allegation(s), the allegation(s) may be resolved without an agreement where compliance is verified and the resolution does not require monitoring by OCR.  Under these circumstances, OCR will issue a dismissal or closure letter pursuant to subsection 110(d).
- Where a recipient has indicated that it is willing to take action in the future to resolve the allegation(s), or the recipient has already taken action that requires monitoring, upon the recipient's request and OCR's agreement, the allegation(s) may be resolved pursuant to section 302.  OCR will obtain a resolution agreement and issue a resolution letter. OCR will monitor the resolution agreement.
- Where OCR obtains sufficient information from the recipient to make a compliance determination pursuant to section 303, OCR will issue letters of findings pursuant to subsection 303(a) or will issue letters of findings and obtain a resolution agreement pursuant to subsection 303(b).  OCR will monitor the

resolution agreement.

# ARTICLE III:    CASE PLANNING, INVESTIGATION, AND RESOLUTION

OCR will ensure that its investigations are legally sufficient and that its determinations are supported by the evidence and dispositive of the allegation(s).  OCR resolution agreements will be drafted to ensure compliance with the civil rights laws that OCR enforces.

When during the course of the investigation of the allegation(s), OCR identifies compliance concerns and/or violations involving issues that were not raised in the complaint, OCR will address any compliance concerns and/or identified violations in one of the following ways:  (a) in the resolution letter or letter of findings and the resolution agreement (see sections 302 and 303), (b) by providing technical assistance to the recipient, or (c) by opening a compliance review or directed investigation.  See sections 401 and 402.

When during the course of the mediation of a complaint, OCR identifies compliance concerns and/or violations involving issues that were not raised in the complaint, OCR will address any compliance concerns and/or identified violations in one of the following ways: (a) by providing technical assistance to the recipient, or (b) by opening a compliance review or directed investigation.  See sections 401 and 402.

## SECTION 301    CASE PLANNING

Case planning will begin as early as possible, will be thorough, and will continue throughout the processing of every case to ensure high quality decisions, prompt investigations and the efficient use of OCR resources.  Planning decisions will reflect sound legal standards and will be adjusted as necessary to consider information obtained during case processing.  See section 702.  The scope of OCR's investigation and resolution activities will depend upon the allegation(s), issue(s), applicable legal standard(s), and the evidence obtained during the investigation.

Regional Office management and investigative staff are accountable for effective planning and will participate in critical planning decisions commensurate with the nature and complexity of the case to ensure consistent and high-quality casework.

The following essential elements of case planning will be addressed in every OCR file (unless inapplicable):

- The allegation(s);
- OCR's jurisdiction over the subject matter and entity;
- The legal standards, statutory and regulatory authority, and elements of proof;
- The scope of the investigation;
- The investigative strategy (i.e., what data and/or information are necessary to resolve the case and The means and methods OCR will employ to obtain the relevant data and/or information); and
- The resolution.

The case file will contain documentation that supports the decisions OCR makes.  Planning documentation will be organized so that it can be readily located in the case file.

## SECTION 302    RESOLUTION AGREEMENT REACHED DURING AN INVESTIGATION

Allegation(s) under investigation may be resolved at any time when, prior to the conclusion of the investigation, the recipient expresses an interest in resolving the allegation(s) ***and*** OCR determines that it is appropriate to resolve them because OCR's investigation has identified concerns that can be addressed through

a resolution agreement.[5]  OCR will inform the recipient that this resolution process is voluntary before proceeding to resolution pursuant to this section.  When OCR determines that it is appropriate to resolve the allegations pursuant to section 302, OCR will notify the complainant of the recipient's interest in resolution.  The provisions of the resolution agreement must be supported by the evidence obtained during the investigation and will be consistent with the applicable statute(s) and regulation(s).  See section 304.

Where OCR has obtained sufficient evidence to support a finding under subsection 303(a) (insufficient evidence) or subsection 303(b) (violation) with regard to any allegation(s), OCR will not resolve the allegation(s) pursuant to section 302 but will proceed in accordance with the appropriate provisions set forth in section 303.

**(a)  Statement of the Case**

For cases with allegations proposed for resolution under section 302, OCR will prepare a Statement of the Case.  The Statement of the Case sets forth:

- A statement of OCR's jurisdictional authority, including recipient status and the statutory basis for the investigation;
- An explanation of the pertinent legal standards;
- The allegation(s) investigated;
- Relevant background information; and
- A summary of the investigation, including an analysis of the evidence obtained to date, and the identified concerns that support the need for the provisions of the resolution agreement.

The Statement of the Case must address all of the allegations proposed for resolution under section 302.

**(b)  Timeframes and Procedures for Negotiations**

From the date that the proposed resolution agreement is shared with the recipient, OCR and the recipient will have a period of up to 30 calendar days within which to reach final agreement.

During the negotiations period (which may be less than 30 calendar days, at the discretion of OCR), OCR may suspend its investigation of the case.  Where a final agreement is not reached by the 30th calendar day, OCR will immediately resume its investigation.  However, negotiations may continue while the investigation resumes.  This 30-calendar-day period for suspension of the investigation in order to conduct negotiations cannot be restarted.

**(c)  Resolution Letters**

The resolution letter will address the allegation(s) in the case resolved pursuant to section 302.  The resolution letter must state:

- OCR's jurisdictional authority, including recipient status and the statutory basis for the investigation;

---

[5] There are circumstances where it is appropriate to resolve allegations(s) pursuant to section 302 before OCR analyzes data (e.g., admissions made by recipients, reports that address the issues under investigation by OCR).  Such proposed resolutions require approval of Headquarters.

- The allegation(s) investigated, a summary and analysis of the evidence obtained to date, and OCR's compliance concern(s);

- When fully implemented, the resolution agreement will address the evidence obtained and all of the allegations investigated. OCR will monitor the implementation of the agreement until the recipient is in compliance with the terms of the agreement and the statute(s) and regulations(s) at issue in the case. See section 304 and Article V; and

- "The complainant may have a right to file a private suit in federal court whether or not OCR finds a violation." For service complaints under the Age Discrimination Act, the complainants may file in federal court only after they have exhausted administrative remedies. See subsection 701(a).

Once the recipient signs the resolution agreement, OCR will monitor its implementation until the recipient is in compliance with the terms of the resolution agreement and the statute(s) and regulation(s) at issue. Upon determining the recipient's compliance, OCR will close the case. See Article V.

## SECTION 303    INVESTIGATIVE DETERMINATIONS

At the conclusion of an investigation, OCR will determine, using a preponderance of the evidence standard, whether:

- There is insufficient evidence to support a conclusion of noncompliance, or
- The evidence supports a conclusion of noncompliance.

### (a)  Insufficient Evidence Determination

When OCR determines that the preponderance of the evidence does not support a conclusion that the recipient failed to comply with applicable statutes and regulations, OCR will issue a letter of findings to the parties explaining the reasons for its decision. See subsection 303(e).

### (b)  Non-Compliance Determination

When OCR determines that the preponderance of the evidence supports a conclusion that the recipient failed to comply with applicable statutes and regulations, OCR will prepare a letter of findings and a proposed resolution agreement.

The agreement must include action steps that, when implemented, will remedy both the individual discrimination at issue as well as any systemic discrimination. OCR will contact the recipient and determine whether the recipient is willing to negotiate a resolution agreement. In addition, OCR will notify the complainant that it intends to negotiate a resolution agreement with the recipient.

### (c)  Mixed Determination

A "mixed determination" is appropriate for complaints with multiple allegations where the allegations will be resolved in different ways. For example, a mixed determination is appropriate when OCR has found: a violation with regard to some allegations and insufficient evidence with regard to other allegations; a violation with regard to some allegations and there are other allegations that are appropriate to resolve prior to the conclusion of the investigation pursuant to section 302; insufficient evidence with regard to some allegations and determined that other allegations are appropriate to resolve prior to the conclusion of the investigation pursuant to section 302. In a "mixed determination" case, where OCR is making a determination pursuant to subsection 303(b), OCR will

negotiate a resolution agreement and issue a letter of findings.  See subsections 303(e) and 304.  In a "mixed determination" case where OCR is not making a determination pursuant to 303(b) but is resolving allegations pursuant to Section 302, OCR will issue a resolution letter pursuant to subsection 302(c).

### (d) Statement of the Case

OCR will prepare a Statement of the Case for investigative determinations under section 303.  The Statement of the Case sets forth:

- The allegation(s) raised in the complaint;
- A statement of OCR's jurisdictional authority, including recipient status and the statutory basis for the investigation;
- An explanation of the pertinent legal standards;
- Relevant background information;
- A statement of each allegation investigated and the findings of fact for each, including analysis of the evidence on which the findings are based;
- A summary of all other evidence obtained during the investigation; and
- Conclusions for each allegation that reference the relevant facts, the applicable regulations, and the appropriate legal standards;
- An explanation of how the terms of the resolution agreement are aligned with the evidence obtained and are consistent with the applicable statute(s) and regulation(s).

### (e) Letter of Findings

For insufficient evidence determinations, OCR will issue a letter of findings that explains the reasons for OCR's determination to the recipient and the complainant.[6]

For non-compliance and mixed determinations that include a non-compliance determination, OCR will issue a letter of findings explaining the reasons for its determination to the parties after engaging in the process set forth in subsection 303(b) and obtaining a resolution agreement signed by the recipient.

Letters of findings will address the evidence obtained during the investigation and must state:

- The allegation(s) opened for investigation;
- OCR's jurisdictional authority, including recipient status and the statutory basis for the investigation;
- The findings of fact for each allegation investigated, supported by any necessary explanation and/or analysis of the evidence on which the findings are based;
- The conclusions for each allegation that reference the relevant facts, the applicable regulations and the appropriate legal standards;
- When fully implemented, the resolution agreement will address OCR's compliance concerns and/or identified violations.  OCR will monitor the implementation of the agreement until the recipient is in compliance with its terms and the statute(s) and regulation(s) at issue in the case.  See section 304 and Article V.
- "The complainant may have a right to file a lawsuit in federal court whether or not OCR finds a violation." For service complaints under the Age Discrimination Act, the complainant may

---

[6] For recipients operating under federal court order, see section 704.

file in federal court only after they have exhausted administrative remedies.  See subsection 701(a).

**(f)  Timeframes and Procedures for Negotiations**

From the date that the proposed resolution agreement is shared with the recipient, the recipient will have a period of up to 90 calendar days within which to sign a final agreement.  The 90-calendar-day negotiations period will not be extended.

**(g)  Negotiation Impasse**

OCR will end the 90-calendar-day negotiations period if the recipient has not signed the final agreement by the 90th day.  OCR will end the negotiations period at any time prior to the expiration of the 90-calendar-day period when it is clear that the final agreement will not be signed (e.g., the recipient has refused to discuss any resolution; the recipient has indicated a refusal to agree to a key resolution term; the recipient has not responded to a proposed resolution agreement and at least 30 calendar days have passed).  At such time, OCR will immediately issue an Impasse Letter that informs the recipient that OCR will issue a Letter of Impending Enforcement Action in 10 calendar days if a resolution agreement is not signed within that 10-calendar-day period.  The letter will describe OCR's unsuccessful attempts to resolve the allegation(s).  If the recipient does not enter into a resolution agreement within 10 calendar days of the date of the issuance of the Impasse Letter, OCR must follow the procedures in section 305 for the issuance of a Letter of Impending Enforcement Action regarding its non-compliance determinations.

## SECTION 304    CONTENTS OF RESOLUTION AGREEMENTS

The allegation(s) will be considered resolved and the recipient deemed compliant when the recipient complies with all of the terms of the resolution agreement and is in compliance with the statute(s) and regulation(s) that were at issue in the case.

**Resolution Agreements**:

- Must be signed by a person with authority to bind the recipient; and
- Must include, in the agreement itself or through an exchange of letters or other written communications:
  - Specific action(s) the recipient will take to resolve compliance concerns and/or violations;
  - Dates for implementing each action(s);
  - Dates for the submission of reports and documentation;
  - Where appropriate, language requiring submission of documents and/or other information for OCR's review and approval, and timeframes for their submission;
  - Timeframes requiring the recipient to implement what OCR has approved, and language requiring documentation verifying implementation be submitted to OCR; and
  - The following statements:
    - By signing the resolution agreement, the recipient agrees to provide data and other information in a timely manner in accordance with the reporting requirements of the resolution agreement.  During the monitoring of the resolution agreement, if necessary, OCR may visit the recipient, interview staff and students, and request such additional reports or data as are necessary for OCR to determine whether the recipient has fulfilled the terms of the resolution agreement;
    - The recipient understands that OCR will not close the monitoring of the agreement until such time as OCR determines that the recipient is in compliance with the terms of the agreement and  the statute(s) and regulation(s) at issue in the case; and

- The recipient understands that OCR may initiate administrative enforcement proceedings or refer the case to the Department of Justice (DOJ) for judicial proceedings in the event of breach. Before initiating such proceedings, OCR will give the recipient written notice of the alleged breach and 60 calendar days to cure the alleged breach.

## SECTION 305    LETTER OF IMPENDING ENFORCEMENT ACTION

When following the expiration of the 10-calendar-day period referenced in subsection 303(g), the recipient does not enter into a resolution agreement to resolve the identified areas of non-compliance, OCR will prepare a Letter of Impending Enforcement Action, which will state:

- The allegation(s) opened for investigation;
- OCR's jurisdictional authority, including recipient status and the statutory basis for the investigation;
- The findings of fact for each allegation investigated supported by any necessary explanation or analysis of the evidence on which the findings are based;
- Conclusions for each allegation that reference the relevant facts, the applicable statute(s) and regulation(s), and the appropriate legal standards;
- Notice that the Letter of Impending Enforcement Action is not intended and should not be construed to cover any other issue(s) regarding the recipient's compliance;
- Notice of the time limit on OCR's resolution process and the consequence of failure to reach agreement;
- A description of OCR's attempts to resolve the case;
- When a decision is made to defer final approval of any applications by the recipient for additional federal financial assistance or, with respect to the Boy Scouts Act, additional funds made available through the Department over what the recipient is presently receiving, the letter also will provide notice of such possible deferral. A separate deferral letter will be prepared; and
- Title II letters will include the following language: "The complainant may have the right to file a private suit pursuant to Section 203 of the Americans with Disabilities Act, whether or not OCR finds a violation of Title II."

## SECTION 306    REFERRALS FROM THE DEPARTMENT OF JUSTICE AND THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

When a Title II complaint is referred to OCR by DOJ, OCR will send a copy of the letter resolving the complaint to DOJ. When a complaint containing an allegation of employment discrimination under Title II or Section 504 has been dual filed with the Equal Employment Opportunity Commission (the EEOC) and OCR, or when a complaint has been referred to OCR by the EEOC, OCR will notify the EEOC once the complaint has been resolved. See 28 C.F.R. Part 37 and 29 C.F.R. Part 1640.

# ARTICLE IV:   COMPLIANCE REVIEWS AND DIRECTED INVESTIGATIONS

The investigation and resolution options and procedures identified in the CPM will be utilized for compliance reviews and directed investigations, as appropriate. See Articles I, III, V, and VI. The initiation date for the compliance review or directed investigation is the date of the letter notifying the recipient of the compliance review or directed investigation.

## SECTION 401    COMPLIANCE REVIEWS

Return to Table of Contents

In addition to the regulations implementing Title VI that govern OCR's investigations, the regulations require OCR to, "from time to time," initiate "periodic compliance reviews" to assess the practices of recipients to determine whether they comply with the Title VI regulations. See 34 C.F.R. § 100.7(a). This regulatory provision is incorporated by reference in the regulations implementing other statutes enforced by OCR. See Title IX (34 C.F.R. § 106.81), Section 504 (34 C.F.R. § 104.61), the Boy Scouts Act (34 C.F.R. § 108.9); the Age Discrimination Act, (34 C.F.R. § 110.30), and Title II (28 C.F.R. § 35.172).

The compliance review regulations afford OCR broad discretion to determine the substantive issues for investigation and the number and frequency of the investigations.

### SECTION 402    DIRECTED INVESTIGATIONS

OCR may conduct a directed investigation when information indicates a possible failure to comply with the laws and regulations enforced by OCR, the matter warrants attention, and the compliance concern is not otherwise being addressed through OCR's complaint, compliance review, or technical assistance activities. See Title VI, 34 C.F.R. § 100.7(c). This regulatory provision is incorporated by reference in the regulations implementing the other statutes enforced by OCR. See Title IX (34 C.F.R. § 106.81), Section 504 (34 C.F.R. § 104.61), the Boy Scouts Act (34 C.F.R. § 108.9), the Age Discrimination Act (34 C.F.R. § 110.30), and Title II (28 C.F.R. § 35.172).

A directed investigation is an OCR-initiated process that allows OCR to address possible discrimination that is not currently being addressed through OCR's complaint, compliance review, or technical assistance activities. Depending on the circumstances, a directed investigation may include offering technical assistance to the recipient, and/or conducting an expedited investigation that may result in a resolution agreement that will ensure that recipients come into compliance with the requirements of the civil rights laws.

## ARTICLE V:   MONITORING RESOLUTION AGREEMENTS

### SECTION 501    RESPONDING TO MONITORING REPORTS AND VERIFYING RECIPIENT'S COMPLIANCE

OCR will promptly acknowledge its receipt of interim and final monitoring reports. OCR will evaluate each report and issue an appropriate response (i.e., where OCR determines actions taken are sufficient or insufficient under the agreement). OCR must obtain sufficient information to determine whether the recipient complied with the terms of the resolution agreement. Depending on the nature of the agreement, verification of remedial actions may be accomplished by, for example, the review of reports, documentation and other information submitted by recipients and knowledgeable persons; interviews of the recipients and knowledgeable persons; or site visits.

### SECTION 502    IMPLEMENTATION PROBLEMS

OCR will promptly provide written notice to the recipient of any deficiencies with respect to compliance with the terms of the agreement and will request appropriate action to address such deficiencies. When OCR has determined that a recipient has failed to comply with the agreement or any of the terms thereof for reasons that do not justify the modification of the agreement pursuant to subsection 503(a), OCR will take prompt action to enforce the agreement pursuant to section 305 and Article VI.

### SECTION 503    MODIFICATION OF AGREEMENTS

**(a)  Changed Circumstances Affecting Agreements**

Return to Table of Contents

OCR may agree to modify (including with respect to deadlines for submitting a report or completing a required action) or terminate a resolution agreement when it learns that circumstances have arisen that substantially change, fully resolve, or render moot some or all of the compliance concerns that were addressed by the resolution agreement.  OCR may also modify the agreement in response to changes in controlling case law, statutes, and regulations.

**(b) New Compliance Issues**

OCR may address new compliance issues identified for the first time during monitoring by providing technical assistance or considering the issues for a possible compliance review or directed investigation.  See sections 401 and 402.

**(c) Approval of Modifications**

OCR must approve modifications to the agreement (e.g., requests to change the substance of any provision in the agreement, or requests for extension of time to submit a report or to complete a required action).  Approved modifications must be set forth in writing and appended to the original agreement.  Requests for modification must be documented in the case file.  OCR will send the complainant written notification of approved modifications to the substance of the original agreement, where appropriate.

## SECTION 504    CONCLUSION OF MONITORING

OCR will conclude the monitoring of a resolution agreement when it determines that the recipient has fully and effectively complied with the terms of the resolution agreement, including any subsequent approved modifications to the agreement, and is in compliance with the statute(s) and regulation(s) at issue in the case.  OCR will promptly send written notification to the recipient and the complainant of its determination.

# ARTICLE VI:   INITIATION OF ENFORCEMENT ACTION

When OCR is unable to negotiate a resolution agreement with the recipient, OCR will initiate enforcement action by (1) initiating administrative proceedings to suspend, terminate, or refuse to grant or continue federal financial assistance or, with respect to the Boy Scouts Act, funds made available through the Department to the recipient; or (2) referring the case to DOJ for judicial proceedings to enforce any rights of the United States under any law of the United States.

## SECTION 601    ADMINISTRATIVE PROCEEDINGS

When post-Letter of Impending Enforcement Action negotiations do not result in a resolution agreement and OCR decides, within its discretion, to initiate administrative proceedings, it will request that an administrative proceeding be initiated.  In collaboration with other Department personnel as appropriate, OCR will establish a team to prosecute the case.  If OCR decides to defer new funds, a Notice of Opportunity for Hearing will be issued within 30 calendar days of the notice of the deferral action.  See section 305.

## SECTION 602    REFERRAL TO DOJ

When post-Letter of Impending Enforcement Action negotiations do not result in a resolution agreement and OCR decides, within its discretion, to refer the matter to DOJ, it will issue a letter to the recipient stating that the case will be referred to DOJ within 10 calendar days of the date of the letter.

## SECTION 603    ENFORCEMENT FOR DENIAL OF ACCESS

A recipient denies access to OCR when it:

- Refuses to permit OCR access during the recipient's normal business hours to information maintained by the recipient that is necessary to determine the compliance status of the allegations under investigation or, during monitoring, the recipient's compliance with a resolution agreement. Generally, this includes access to books, records, and accounts, including electronic storage media; retrieval systems and photocopies; and other sources of information, including witnesses and the recipient's facilities;
- Refuses to permit OCR access to its employees during the recipient's regular business hours;
- Fails to provide information by virtue of the refusal of one of its employees to do so or to provide access to information maintained exclusively by an employee in their official capacity; or
- Refuses to complete applicable Office of Management and Budget-approved compliance and survey forms relevant to an investigation.

Where the recipient has refused to provide OCR with access, OCR must attempt to ascertain the basis for the recipient's refusal and explain OCR's authority to obtain the evidence. Where attempts to persuade the recipient to provide access have failed, OCR must send a letter to the recipient that sets forth in detail the evidence (e.g., documents, data, other information, or witnesses) to which the recipient denied OCR access and specifies the efforts that OCR has made to obtain the evidence. If the recipient does not voluntarily provide OCR with access to the requested evidence within 30 calendar days of OCR's issuance of the letter to recipient, OCR will issue a Letter of Impending Enforcement Action. If the recipient continues to deny OCR access to the requested evidence, OCR will issue a letter to the recipient stating OCR's intention to take enforcement action.

### SECTION 604    ENFORCEMENT FOR FAILURE TO COMPLY WITH OCR AGREEMENT

Where the recipient has failed to comply with the terms of a resolution agreement, OCR will issue a Letter of Impending Enforcement Action pursuant to section 305. If the recipient does not come into compliance after issuance of the Letter of Impending Enforcement Action, OCR will initiate enforcement action pursuant to section 601 or section 602.

# ARTICLE VII:    APPENDICES

### SECTION 701    SPECIAL INTAKE PROCEDURES

#### (a) Age Discrimination Complaints

An age discrimination complaint is timely when it is filed within 180 calendar days of the date the complainant first had knowledge of the alleged discrimination. For good cause shown, OCR may extend this time limit.

For service complaints under the Age Discrimination Act, the complainant may file a civil action under the Age Discrimination Act in federal court but only after they have exhausted administrative remedies. Administrative remedies are exhausted when either of the following has occurred: (1) 180 calendar days have elapsed since the filing of a complaint with OCR and OCR has made no finding, or (2) OCR issues a finding in favor of the recipient. If OCR fails to make a finding within 180 calendar days or issues a finding in favor of the recipient, OCR will promptly notify the complainant of this fact and of their right to bring a civil action for injunctive relief. OCR's notice must also contain the following information: (1) that a civil action can be brought only in a United States district court for the district in which the recipient is located or transacts business; (2) that a complainant prevailing in a civil action has the right to be awarded the costs of the action, including

reasonable attorney's fees, but that these costs must be demanded in the complaint filed with the court; (3) that before commencing the action, the complainant will give 30 calendar days' notice by registered mail to the Secretary, the Secretary of Health and Human Services, the Attorney General of the United States, and the recipient; (4) that the notice will state the alleged violation of the Age Discrimination Act, the relief requested, the court in which the action will be brought, and whether or not attorney's fees are demanded in the event the complainant prevails; and (5) that the complainant may not bring an action if the same alleged violation of the Age Discrimination Act by the same recipient is the subject of a pending action in any court of the United States.

## 1. Employment Complaints

OCR does not have jurisdiction over employment complaints under the Age Discrimination Act. Employment complaints filed by persons 40 and older are referred to the appropriate EEOC office, and the OCR complaint is dismissed. Employment complaints filed by persons under 40 are not within the jurisdiction of EEOC and may be closed with notice to the complainant that there is no jurisdiction under the Age Discrimination Act. If the complaint alleges age discrimination in employment that is within EEOC's jurisdiction and also contains allegations of discrimination in services within the jurisdiction of OCR, the complaint is split into two separate cases. Each is given its own case number, the age employment complaint is referred to EEOC with the OCR age employment case being dismissed, and OCR proceeds with the complaint based on allegations of discrimination in services.

## 2. Service Complaints

All complete and timely complaints (see 34 C.F.R. §§ 110.31 and 110.32) containing an allegation of age discrimination in services are promptly referred to the following address or the appropriate Regional Office by e-mail or mail:

> Federal Mediation and Conciliation Service
> Attention: Alternative Dispute Resolution Department
> 250 E. Street SW
> Washington, D.C. 20427

Where OCR receives a complaint containing both allegations of age discrimination in services and allegations under Title VI, Title IX, Title II, Section 504, and/or the Boy Scouts Act, and OCR determines that the non-age allegation is independent and separable from the age allegation, OCR will refer only the age portion of the complaint to FMCS. OCR will proceed to investigate the additional allegations over which OCR has jurisdiction. OCR will not wait for mediation of the age portion of the complaint to conclude before beginning investigation of the non-age portion of the complaint.

Copies of the complaint and letters to the complainant and recipient and a completed FMCS "Request for ADA Mediation Assistance" must be included.

If FMCS does not resolve the complaint within 60 calendar days from the date of filing with OCR, OCR will resume processing the age aspects of the complaint. The date that the complaint or any portion of the complaint is sent to FMCS will be entered in CMS. The date that the complaint is referred back from FMCS will also be entered in CMS. FMCS's processing time will, therefore, not be included in OCR's case processing time.

## (b) Title VI Complaints against Proprietary Schools

Authority to process Title VI complaints against proprietary vocational schools (privately owned, profit-making enterprises that teach a trade or skill) has, with certain exceptions, been delegated to the U.S. Department of Veterans Affairs.  Such complaints must be forwarded to:

> U.S. Department of Veterans
> Affairs Office of Resolution Management
> 810 Vermont Avenue, N.W.
> Washington, D.C.  20420

OCR must refer to the U.S. Department of Health and Human Services Title VI complaints filed against a proprietary school operated by a hospital.  The complaint is then dismissed.  The complainant must be notified of the referral.

The following exceptions apply.
- OCR remains responsible for enforcement of Title VI where a proprietary vocational school is operated by a college or university.  See 38 C.F.R. §18a.1(a).
- OCR remains responsible for enforcement of Title VI where a proprietary vocational school offers non-degree courses for which credit is given and which, on transfer, would be accepted toward a baccalaureate or higher degree by a degree-granting institution.  See 38 C.F.R. § 18a.1(b).

**(c) Title VI and Title IX Employment Complaints (see 29 C.F.R. §§ 1691.1 – 1691.13 and 28 C.F.R. §§ 42.601 – 42.613)**

Race, color, national origin, and sex discrimination in employment complaints will be processed in accordance with the government-wide regulations.  OCR will:

1. Within 10 calendar days of receipt, notify the complainant and the recipient that OCR has received the complaint, including the date, place and circumstances of the alleged unlawful employment practice.
2. Within 30 calendar days of receipt:
    i. Determine whether OCR has jurisdiction over the complaint under Title VI and/or Title IX.
    ii. Determine whether EEOC may have jurisdiction over the complaint.
    iii. Transfer to EEOC all complaints over which OCR does not have jurisdiction but over which EEOC may have jurisdiction and notify the complainant and the recipient of the transfer, the reason for the transfer, the location of the EEOC office to which the complaint was transferred and that the date the agency received the complaint will be deemed the date it was received by EEOC.
    iv. Refer to EEOC certain complaints over which both OCR and EEOC appear to have jurisdiction ("joint complaints"), consistent with the following guidance:
        - Absent special circumstances, OCR will refer a joint complaint that solely alleges employment discrimination against an individual.
        - Absent special circumstances, OCR will not refer a joint complaint alleging a pattern or practice of employment discrimination.
        - Absent special circumstances, OCR will not refer a joint complaint that alleges discrimination in employment and includes allegations regarding other practices of a recipient.  If, because of special circumstances, the employment allegations of such a complaint are referred to EEOC, OCR will assign a new case number to the allegations that are retained.
        - OCR will notify the complainant and recipient of the action taken on the joint complaint.  In the case of a referral to EEOC, the notice will include the location

of the EEOC office to which the complaint was referred, the civil rights provisions involved, the authority of EEOC under this regulation and that the date the agency received the complaint will be deemed the date it was received by EEOC.

- For those joint complaints retained for OCR investigation, OCR will contact EEOC to ensure that, in the event EEOC has also received the complaint, EEOC defers its investigation.

**(d)  Title II ADA Complaints (Other than Employment) (see 28 C.F.R. § 35.171(a)(2)(i))**

OCR has jurisdiction to investigate Title II complaints against public elementary and secondary education systems and institutions, public institutions of higher education and vocational education (other than schools of medicine, dentistry, nursing, and other health-related schools), and public libraries.  When OCR receives an ADA-only complaint over which it does not have jurisdiction, it will be referred to DOJ and then dismissed.  The complainant will be notified of the referral.

**(e)  Title II ADA Complaints (Employment) (see 28 C.F.R. § 35.171(b))**

### 1.  Referral or Deferral

i.   Disability employment complaints will be referred to the DOJ Civil Rights Division if OCR has no jurisdiction under either Title II of the ADA or Section 504 of the Rehabilitation Act of 1973, and EEOC does not have jurisdiction under Title I (*i.e.*, the recipient has fewer than 15 employees).  If EEOC has jurisdiction under Title I (i.e., the recipient has 15 or more employees), the complaint will be referred to EEOC.

ii.  OCR will defer individual complaints unless the complainant elects to have OCR process the charge.  OCR must notify the complainant in writing that they may choose whether to have OCR or EEOC process the complaint and that if the complainant would like OCR to process the complaint, OCR must receive such written request within 20 calendar days of the date of the letter.  See 28 C.F.R. § 37.8(a)(1).  If special circumstances make deferral inappropriate, OCR and the appropriate agency may jointly determine to reallocate investigation responsibilities. See 28 C.F.R. § 37.8(e).

### 2.  Retention

i.   When OCR has jurisdiction over a disability employment complaint under Section 504, OCR will retain the complaint if:
- EEOC does not have jurisdiction under Title I (i.e., if fewer than 15 employees);
- EEOC has jurisdiction, but the complainant elects to have OCR process the complaint;
- The complaint alleges discrimination in both employment and other practices or services covered by Section 504; or
- The complaint alleges a pattern or practice of employment discrimination. See 28 C.F.R. § 37.6(d)(1).

ii.  When OCR has jurisdiction under Title II of the ADA but not under Section 504, OCR will retain jurisdiction over a complaint when it determines that EEOC does not have jurisdiction under Title I.  See 28 C.F.R. §§ 37.6(d)(2) and (3).

**SECTION 702    DATA COLLECTION AND INFORMATION GATHERING**

**(a) Generally**

OCR's data collection and information gathering activities will vary from case to case depending on applicable legal standards, investigative strategies, and the extent to which relevant data/information are in the control of the recipient or others.  Some general investigative principles and practices include:

- Obtain independent written documentation to corroborate oral statements;
- Label all evidence, documents, electronic media, and written records of contact with information identifying the case being investigated and the circumstances under which the evidence was obtained (e.g., where and when an interview was conducted, and who provided a given document);
- Document efforts to obtain access to recipient data and witnesses;
- Undertake a robust outreach to the recipient community to increase access to relevant information in the conduct of an investigation (*e.g.,* by publicizing OCR's presence and availability in onsite investigations for individual interviews and focus groups as well as OCR's availability for discussion with interested individuals before and subsequent to the onsite), as appropriate; and
- Collect data resulting from any methods that OCR or recipients use to track and evaluate compliance with their legal responsibilities (*e.g.,* data from OCR's Civil Rights Data Collection, recipient public websites, climate surveys, and other self-assessment tools).

**(b) OCR's Authority to Obtain Information**

OCR has the right of access during a recipient's regular business hours to the recipient's facilities and to information maintained by the recipient that is necessary to determine compliance status on those issues under investigation.  See 34 C.F.R. § 100.6(c), 34 C.F.R. § 99.31(a)(3)(iii) and 34 C.F.R. § 110.22.  Generally, this includes access to such of the recipient's books, records, accounts, including electronic storage media, microfilming, retrieval systems and photocopies maintained by the recipient, and other sources of information, including witnesses, and its facilities, as may be relevant, in OCR's judgment, to ascertain compliance.

**(c) Requests for Records**

    **1. Data Requests**

    A data request seeks information from the recipient relevant to the investigation.  It can be used to initiate information collection or to request further information, as necessary.

    **2. Timeframes for Recipient's Response**

    The recipient will be given an appropriate amount of time to submit the information required, which will be determined on the basis of the nature and extent of OCR's data request.  This timeframe is established in OCR's discretion, considering factors such as the feasibility of complying with the request in the determined time period.

    **3. Data Provided by Recipient**

    A recipient must submit information as necessary for OCR's compliance activities.  However, other federal regulations and policies may restrict OCR's information requests:

    i.    For example, in the context of an ongoing complaint, compliance review, or directed investigation, OCR may require recipients to record information in such form and containing such information as OCR may determine is necessary to assess

compliance, without obtaining prior approval for its use by the Office of Management and Budget.[7]  See 34 C.F.R. § 100.6(b).

ii.  OCR must consider federal policies concerning paperwork burdens when requesting that a recipient do more than provide OCR access to normally maintained information.  Requests that a recipient generate, aggregate, or compile information to meet an OCR need must be reasonable and may not be unduly burdensome.  Recipients that maintain data in an electronic format must provide the data in that format to OCR in a file type that can be accessed by OCR.  Recipients that do not maintain data in an electronic format are encouraged to provide the requested information in an electronic format that can be accessed by OCR.

If a recipient invites OCR to come onsite and collect the requested information, including the interview of witnesses and provides OCR with sufficient access to files, records, logs, and appropriate indexes for OCR to obtain the needed information, then the recipient will be deemed to have provided OCR with the requisite access necessary to satisfy this provision.

### 4. Data Provided by Recipient

OCR has the right of access to a recipient's records, even if those records identify individuals by name.  To protect the confidential nature of the records, OCR may, for example, permit the recipient to replace names with a code, and to retain a key to the code.  However, OCR should inform the recipient that if at any time, such a procedure impedes the timely investigation of the case, OCR will have access to the unmodified records.  See 20 U.S.C. §§ 1232g(b)(1)(C)(i)(II) and (b)(3) and 34 C.F.R. §§ 99.31(a)(3)(iii) and 99.35 regarding the applicable provisions of the Family Educational Rights and Privacy Act that allow OCR to have non-consensual access to educational agencies' and institutions' education records and personally identifiable information contained therein.

## (d) Interviews

### 1. Introduction

Interviews are an integral part of investigations.  The objective of interviews is to gain an understanding of the records and data relevant to the issues in the case; to obtain information from and assess the credibility of witnesses; and to evaluate recipient defenses.  OCR may conduct individual interviews and focus groups, as appropriate, as part of its investigations.  OCR will make efforts to work with recipients to conduct interviews in a manner that minimizes disruptions to the recipient's educational environment.

### 2. Notice

Prior to initiating an interview, OCR will inform the witness of the following.

i.  The general purpose of the interview, including OCR's role, what law or laws may be pertinent to the investigation, and where appropriate, a brief explanation of what is under investigation.

ii.  The approximate maximum amount of time that the interview may take.

iii.  The potential uses of the information to be obtained from the witness and information concerning the Freedom of Information Act.  A witness who wants

---

[7] The Paperwork Reduction Act only applies to collections directed at ten or more respondents, with one important exception.  Any information requirement in a "rule of general applicability" is presumed to affect or potentially affect at least ten respondents

     a more thorough explanation should be given a copy of the "OCR Notice of Witness Rights." This Notice is available at: (https://www2.ed.gov/about/offices/list/ocr/docs/witness-notice- mw.pdf).

iv.  The witness's right to personal representation during the interview by a person of their choice.

v.  When the witness is an employee of a recipient, their right to refuse to have anyone else present during the interview and their right to refuse to reveal the content of an interview.

vi.  The regulatory provisions concerning prohibition of intimidating or retaliatory acts by a recipient.

vii.  In most cases, the recipient's counsel will be allowed to be present during upper level management interviews.

### 3. Privacy

The privacy interests of witnesses will be considered in selecting the conditions and means employed by OCR to conduct witness interviews. An interpreter may be used when safeguards are taken to ensure the competence of the interpreter and to protect the witness's privacy.

### 4. Interviews with Minors (Persons under 18) or Legally Incompetent Individuals

OCR will obtain written consent from a parent or guardian prior to conducting an interview of any person under 18 years of age or otherwise adjudicated legally incompetent, for example, mentally impaired. Parental or legal guardian consent may not be required for persons under 18 if they are emancipated under state law or in the context of Section 504, whose IDEA rights have transferred under 20 U.S.C. § 1415(m) and are therefore considered to have obtained majority. For persons under 18 who state they are emancipated or whose IDEA rights have transferred, OCR should obtain proof of emancipation or proof of transfer of IDEA rights.

Parental or legal guardian consent may not be necessary where the questions asked are of a general nature, not related to any specific events in which the minor was involved, and there are no records kept identifying the student. Where a recipient refuses to allow minor students to be interviewed without consent where the questions asked are of a general nature, not related to any specific events in which the minor was involved, and there are no records kept identifying the student, written consent must be obtained.

Where parents or guardians refuse to provide consent for an interview, and OCR determines that the child's information is critical, OCR may attempt to secure parental or guardian consent by inviting the parent or guardian to be present during the interview. Where consent is denied, OCR will not interview the child.

### 5. Records of Interviews

A written record of interviews (i.e., in-person, telephonic, or through use of other electronic media) must be kept. Interviewers will notify interviewees when recording is used and recording will be done only with the consent of the interviewee. When interviewers record interviews, the recording becomes part of the case record along with the written record. Regardless of the technique used during the interview, a written record of the interview must be created.

Return to Table of Contents

The record of the interview to be placed in the case file must contain the following information.

  i.   The case identification (name and docket number).
  ii.  The name and identification of the interviewee, interviewer, and any other person present (include an explanation for the presence of any other persons).
  iii. The date, time, and location of interview (including whether the interview was conducted in person or through use of media (e.g., telephone, videoconferencing).
  iv.  A record of whether the interviewee was informed of required notifications.
  v.   A written record reflecting the questions and responses obtained during the interview (this need not be a verbatim transcript but must accurately reflect the responses of the witness).

## SECTION 703    FREEDOM OF INFORMATION ACT AND PRIVACY ACT

The information OCR collects is analyzed by authorized personnel within the agency and is used only for authorized civil rights compliance and enforcement activities. In order to resolve a complaint OCR may need to reveal certain information to persons outside the agency to verify facts or gather additional information.

Such information could include the name, the age or physical condition of a complainant. The Privacy Act governs the maintenance of records contained in a system of records, and FOIA establishes a public right of access (with certain exemptions) to OCR's records.

The Privacy Act regulates the collection, maintenance, use, and dissemination of certain personal information in records contained in a federal agency's system of records. OCR's investigation files have been exempted from certain provisions of the Privacy Act, including, but not limited to, provisions that provide individuals with notification of, access to, and correction or amendment of records maintained on them. See 34 C.F.R. § 5b.11(c)(2)(ii). The Department has published in the Federal Register a Privacy Act system of records notice entitled "Complaint Files and Log" (18-08-01). Third parties may not gain access to records about individuals within a system of records without the prior written consent of the subject individual except as required by FOIA or pursuant to other statutory exceptions contained in the Privacy Act. See 5 U.S.C. § 552a(b).

The FOIA gives the public a right of access to records of federal agencies. The FOIA is implemented by Department regulations. See 34 C.F.R. Part 5.

Although each FOIA request will be reviewed on a case-by-case basis, generally, OCR is not required to release documents, or portions thereof, during the case resolution and investigation process or enforcement proceedings if the release could reasonably be expected to interfere with OCR's law enforcement activities. See 5 U.S.C. § 552(b)(7)(A). Also, a federal agency is not required to release inter- or intra-agency records, or portions thereof, if they are pre-decisional, deliberative documents, or if the records would otherwise be subject to certain privileges in litigation. See 5 U.S.C. § 552(b)(5). Further, a federal agency may not release documents, or portions thereof, that constitute commercial or financial information, obtained from a submitter, that is privileged or confidential. See 5 U.S.C. § 552(b)(4). Finally, a federal agency may not release documents, or portions thereof, if their release would or could result in an unwarranted invasion of privacy of an individual. See 5 U.S.C. §§ 552(b)(6) and (7)(C). Disclosure will only be made as consistent with the Privacy Act and FERPA. OCR will only reveal the name or identifying information about an individual if such disclosure is consistent with the Privacy Act and FERPA.

In addition, OCR can release certain information about the complaint to the press or general public, including the name of the school or institution alleged to have discriminated; the date the complaint was filed; the type of discrimination alleged in the complaint; the date the complaint was resolved; the basic reasons for OCR's decision; and other related information. Any information OCR releases to the press or general public will not

include the complainant's name or the name of the person(s) on whose behalf the complaint was filed, except as noted in the paragraph above.

### SECTION 704    RECIPIENTS OPERATING UNDER FEDERAL COURT ORDER

**(a) When the United States is a Party to the Court Order**

When OCR receives a complaint alleging discrimination by a recipient against which the DOJ represents the United States as a party in pending litigation, the following procedures will apply:

1. **OCR notification to DOJ**: OCR will forward the complaint to DOJ by e-mail immediately and ask whether DOJ wants OCR to refer the complaint to DOJ. This will occur before any OCR evaluation of the complaint begins and even if it is clear on the face of the complaint that OCR would not open it for investigation.
2. **DOJ response**: DOJ will have seven calendar days after the date of OCR's e-mail notification to determine whether: (1) DOJ wants OCR to refer the complaint to DOJ; or (2) DOJ does not want OCR to refer the complaint to DOJ. There are no additional options. For example, a complaint cannot be conditionally referred or conditionally declined, nor may DOJ request referral of only a portion of a complaint.
3. **No referral to DOJ**: When DOJ indicates that it does not want OCR to refer the complaint, or DOJ does not respond within seven calendar days of the date of OCR's e-mail notification, OCR, in its sole authority, will immediately process the complaint.
4. **Referral to DOJ**: When DOJ indicates that it wants OCR to refer the complaint, then:
   i.   OCR will refer the entire complaint to DOJ;
   ii.  OCR will dismiss the complaint and notify the complainant that the complaint has been referred to DOJ; and
   iii. Once the complaint is referred to DOJ, DOJ will be responsible for investigating and resolving the entire complaint. OCR will forward all communications it receives from the complainant relating to the complaint to DOJ and DOJ will be responsible for addressing all such communications. OCR will not accept any type of return or re-referral of the complaint from DOJ.

**(b) When the United States is Not a Party to the Court Order**

As part of evaluation of the complaint, OCR will consult with parties about the current status of the court order.