UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LOUIS BRANDEIS CENTER, INC., et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 24-1982 (RC) |
| DEPARTMENT OF EDUCATION, et al., | |
| Defendants. | |

**<u>DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM IN SUPPORT</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES .........................................................................................ii

BACKGROUND ........................................................................................................ 2

    I.     Enforcement by the Department's Office for Civil Rights.................................. 2

    II.    The Brandeis Center's Administrative Complaint.................................................. 5

    III.   This Action .................................................................................................. 6

LEGAL STANDARDS ............................................................................................... 7

    A.    Rule 12(b)(1)................................................................................................ 7

    B.    Rule 12(b)(6)................................................................................................ 8

ARGUMENT .............................................................................................................. 9

    I.     Count I Should be Dismissed Because Plaintiffs Have an Adequate, Alternative Remedy that Precludes APA Review; Additionally, the Department's Actions are Committed to Agency Discretion by Law ............................................................ 9

        A.    An Adequate Remedy Precludes Plaintiffs' APA Claims ........................ 10

        B.    Plaintiffs' Claims Lack Merit Because the Department's Actions are Committed to Agency Discretion by Law ................................................ 12

    II.    Plaintiffs Lack Standing To Mount a Challenge To the Process Used By the Office In Changing the Case Processing Manual and the Office Complied With the APA In Changing the Manual ........................................................................ 16

        A.    Plaintiffs Cannot Rely On the Dismissal of the Administrative Complaint Against the University of Pennsylvania To Establish Standing To Raise Their Arguments About Removing a Right To Appeal From the Case Processing Manual ....................................................................... 16

        B.    Plaintiffs Fail to Identify Any Actual or Imminent Injury to Establish Standing Stemming from the Department's Removal of the Appeal Provision From the Case Processing Manual ........................................... 18

        C.    The Department Was Not Required to Provide Notice and Comment Regarding Changes to Its Internal Case Processing Manual ................... 20

    III.   Plaintiffs' Fifth Amendment Due Process Claim Fails for Lack of Standing and On The Merits ................................................................................................. 23

CONCLUSION........................................................................................................... 26

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Abhe & Svoboda, Inc. v. Chao*,
  508 F.3d 1052 (D.C. Cir. 2007) ................................................................ 8

*Albra v. Off. for C.R.*,
  No. 18-5112, 2018 WL 6720648 (D.C. Cir. Dec. 18, 2018) .................................. 10

*Am. Anti-Vivisection Soc'y v. Dep't of Agric.*,
  946 F.3d 615 (D.C. Cir. 2020) ................................................................ 18

*Am. Disabled for Attendant Programs Today v. Dep't of Hous. & Urb. Dev.*,
  170 F.3d 381 (3d Cir. 1999) ................................................................. 13

*Am. Farm Bureau v. EPA*,
  121 F. Supp. 2d 84 (D.D.C. 2000) ............................................................ 7

*Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. Nat'l Lab. Rels. Bd.*,
  57 F.4th 1023 (D.C. Cir. 2023) ..................................................... 20, 21, 22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................... 8

*Batterton v. Marshall*,
  648 F.2d 694 (D.C. Cir. 1980) .............................................................. 20

*Bd. of Regents of State Colleges v. Roth*,
  408 U.S. 564 (1972) ........................................................................ 23

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................... 8

*Bochra v. Dep't of Educ.*,
  No. 22-2903, 2024 WL 808061 (7th Cir. Feb. 27, 2024) .................................. 11, 13

*Cannon v. Univ. of Chi.*,
  441 U.S. 677 (1979) ......................................................................... 3

*Connor v. EEOC*,
  736 F. Supp. 570 (D.N.J. 1990) ............................................................. 24

*Council for the Blind of Del. Cnty. Valley, Inc. v. Regan,*
709 F.2d 1521 (D.C. Cir. 1983) ................................................................. 10, 24

*Ctr. for Biological Diversity v. Haaland,*
849 F. App'x 2 (D.C. Cir. 2021) ................................................................. 19

*Ctr. for Sustainable Econ. v. Jewell,*
779 F.3d 588 (D.C. Cir. 2015) ................................................................. 19

*Cunningham v. Riley,*
98 F. Supp. 2d 554 (D. Del. 2000) ................................................................. 24

*Fla. Audubon Soc'y v. Bentsen,*
94 F.3d 658 (D.C. Cir. 1996) ................................................................. 20

*Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n,*
103 F. Supp. 3d 113 (D.D.C. 2015) ................................................................. 8

*Francis-Sobel v. Univ. of Me.,*
597 F.2d 15 (1st Cir. 1979) ................................................................. 24

*Freedom Watch, Inc. v. McAleenan,*
442 F. Supp. 3d 180 (D.D.C. 2020) ................................................................. 14

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,*
528 U.S. 167 (2000) ................................................................. 16

*Garcia v. Vilsack,*
563 F.3d 519 (D.C. Cir. 2009) ................................................................. 12

*Grand Lodge of Fraternal Order of Police v. Ashcroft,*
185 F. Supp. 2d 9 (D.D.C. 2001) ................................................................. 7

*Haase v. Sessions,*
835 F.2d 902 (D.C. Cir. 1987) ................................................................. 7

*Havens Realty Corp. v. Coleman,*
455 U.S. 363 (1982) ................................................................. 18

*Heckler v. Chaney,*
470 U.S. 821 (1985) ................................................................. 1, 13

*Herbert v. Nat'l Acad. of Scis.,*
974 F.2d 192 (D.C. Cir. 1992) ................................................................. 7

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977) .................................................................................... 19

*Inova Alexandria Hosp. v. Shalala*,
  244 F.3d 342 (4th Cir. 2001) ...................................................................... 22

*James V. Hurson Assocs., Inc. v. Glickman*,
  229 F.3d 277 (D.C. Cir. 2000) ..................................................................... 21

*Jerome Stevens Pharms. v. FDA*,
  402 F.3d 1249 (D.C. Cir. 2005) ..................................................................... 7

*Jersey Heights Neighborhood Ass'n v. Glendening*,
  174 F.3d 180 (4th Cir. 1999) ...................................................................... 10

*Kaempe v. Myers*,
  367 F.3d 958 (D.C. Cir. 2004) ....................................................................... 8

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ...................................................................................... 7

*Marlow v. Dep't of Educ.*,
  820 F.2d 581 (2d Cir. 1987) ................................................................... 10, 13

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) .................................................................................... 25

*Nat'l Sec. Counselors v. CIA*,
  931 F. Supp. 2d 77 (D.D.C. 2013) ...................................................... 20, 21, 22

*Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*,
  366 F.3d 930 (D.C. Cir. 2004) ..................................................................... 12

*Ndondji v. Interpark Holdings, Inc.*,
  768 F. Supp. 2d 263 (D.D.C. 2011) ................................................................ 8

*Nelson v. Colorado*,
  581 U.S. 128 (2017) .................................................................................... 25

*Payne v. Becerra*,
  Civ. A. No. 22-0869 (RC), 2023 WL 3376630 (D.D.C. May 11, 2023) ................................. 14

*Payne v. Vilsack*,
  Civ. A. No. 21-1571 (RC), 2023 WL 6160012 (D.D.C. Sept. 21, 2023) ................................. 13

*Pub. Citizen v. Dep't of State*,
276 F.3d 634 (D.C. Cir. 2002) ........................................................ 22

*Renteria v. Donahue*,
92 F.3d 1197, 1996 WL 446905 (10th Cir. Aug. 8, 1996) ...................... 11

*Sierra Club v. EPA*,
754 F.3d 995 (D.C. Cir. 2014) ........................................................ 19

*Skewes-Cox v. Georgetown Univ. L. Ctr.*,
No. 24-5065, 2024 WL 4248506 (D.C. Cir. Sept. 18, 2024)................... 10

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)........................................................................ 16

*Stimac v. Barr*,
10 F.3d 808, 1993 WL 483837 (9th Cir. Nov. 23, 1993) ..................... 11

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009)........................................................................ 19

*U.S. Ecology, Inc. v. Dep't of Interior*,
231 F.3d 20 (D.C. Cir. 2000) .......................................................... 7

*Venetian Casino Resort, LLC v. EEOC*,
409 F.3d 359 (D.C. Cir. 2005) ........................................................ 7

*Walters v. Nat'l Ass'n of Radiation Survivors*,
473 U.S. 305 (1985)........................................................................ 25

*Wash. Legal Found. v. Alexander*,
984 F.2d 483 (D.C. Cir. 1993) ........................................................ 10

*WildEarth Guardians v. Jewell*,
738 F.3d 298 (D.C. Cir. 2013) ........................................................ 20

*Women's Equity Action League v. Cavazos*,
906 F.2d 742 (D.C. Cir. 1990)............................................... 10, 11, 23, 24

*Zadoorian v. Gwinnett Tech. Coll.*,
No. 22-14206, 2024 WL 1554362 (11th Cir. Apr. 10, 2024) ................. 12

**Statutes**

5 U.S.C. § 553.................................................................................. 20

5 U.S.C. § 701(a)(2).......................................................................... 12

5 U.S.C. § 704 ................................................................................................ 10

5 U.S.C. § 706(2) .............................................................................................. 6

20 U.S.C. § 1681 .............................................................................................. 2

29 U.S.C. § 794 ................................................................................................ 2

42 U.S.C. § 2000d-1 ..................................................................................... 1, 3

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ............................................................................... 1, 8

**Regulations**

34 C.F.R. § 100.6-100.11 ................................................................................. 3

34 C.F.R. § 100.7 ........................................................................................... 22

34 C.F.R. § 100.7(b) ........................................................................................ 3

**Other Authorities**

Federal Practice and Procedure § 1350 (2d ed. 1987) ..................................... 7

Plaintiffs the Louis D. Brandeis Center, Inc ("Center") and Jewish Americans for Fairness in Education (collectively, "Plaintiffs") filed this action against the Department of Education ("Department"), Miguel Cardona and Catherine Lhamon, in their official capacities as Secretary of the Department and Assistant Secretary for the Department's Office for Civil Rights ("Office"), challenging the Office's dismissal of an administrative complaint filed by the Center alleging discrimination on the basis of race, color or national origin under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d-1, against the University of Pennsylvania. Plaintiffs also contend that the Office's removal of the appeal provision from its Case Processing Manual in July 2022, more than a year before the Center filed its administrative complaint, violated the notice and comment rulemaking requirements of the Administrative Procedure Act ("APA") and Plaintiffs' constitutional due process rights. For these purported violations, Plaintiffs seek reinstatement of their previously dismissed administrative complaint and resumption of their investigation as well as reinstatement of any other investigations unlawfully dismissed by the Office since October 7, 2023. But as explained further below, numerous reasons counsel in favor of a full dismissal of this action under Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6).

First, Plaintiffs' claims in Count I that the Office's actions were arbitrary and capricious in violation of the APA should be dismissed because there is an adequate, alternative remedy to Plaintiffs' claims, namely, a suit against the alleged transgressor of Title VI—the University of Pennsylvania. Because this is an adequate remedy that Congress has recognized, Plaintiffs' APA claims fail. Additionally, Count I similarly fails because the Department's actions are "committed to agency discretion by law" under *Heckler v. Chaney*, 470 U.S. 821, 828 (1985), foreclosing Plaintiffs' APA claims here.

Second, Plaintiffs' APA claim in Count II that the Office's failure to engage in notice and comment before changing its Case Processing Manual to remove a complainant's opportunity to administratively appeal a dismissal fails because the Case Processing Manual is exempt from the APA's rulemaking requirements as a "rule[] of agency organization, procedure, or practice."  In any event, Plaintiffs lack standing to bring that APA claim because the earlier iteration of the Case Processing Manual that Plaintiffs believe ought to govern (even though it too was not adopted through notice and comment) also would not have authorized the Center to administratively appeal its administrative complaint's dismissal. And Plaintiffs lack standing to challenge the absence of an administrative appeal for other cases because they did not allege that they had another administrative matter pending before the Office that is at substantial risk of being dismissed on a ground previously appealable.  Finally, Plaintiffs lack standing to pursue their Due Process claim in Count III and, on the merits, point to no liberty or property interest of which they have been deprived by the absence of an administrative appeal.

## BACKGROUND

### I.  <u>Enforcement by the Department's Office for Civil Rights</u>

The Office for Civil Rights enforces multiple civil rights laws against entities that receive Federal financial assistance (including federal funds) from the Department. These statutes include Title VI, which prohibits discrimination based on race, color, or national origin; Title IX of the Education Amendments of 1972 ("Title IX"), which prohibits recipients from discriminating based on sex, *see* 20 U.S.C. § 1681 et seq.; and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), which prohibits recipients from discriminating on the basis of disability. *See* 29 U.S.C. § 794 et seq.  These federal civil rights statutes provide two mechanisms for ensuring compliance with their respective mandates.  First, individuals alleging that they are injured by discriminatory practices can bring a cause of action directly against the discriminating educational institution.

*See Cannon v. Univ. of Chi.*, 441 U.S. 677 (1979).  The second mechanism for ensuring compliance with the anti-discrimination mandates set forth in Title VI, Section 504, and Title IX is through federal agencies, such as the Department, that disburse federal funds to educational institutions.  These three federal civil rights statutes require federal agencies to ensure compliance first through voluntary means. *See e.g.*, 42 U.S.C. § 2000d-1 (Title VI). If that fails, a federal agency may initiate enforcement proceedings that could lead to the termination of federal funding. *See id*. To this end, the Department's regulations establish procedures for conducting compliance reviews and investigating complaints of discrimination, which are carried out by the Office.  *See* 34 C.F.R. § 100.6-100.11.

In addition to conducting proactive compliance reviews of the practices of certain recipients, any person who believes that they or any class of individuals has been subjected to unlawful discrimination may file a written complaint with the Office.  34 C.F.R. § 100.7(b).  If the Office determines that the complaint indicates a possible failure to comply with the relevant civil rights laws and regulations, the Office will make a prompt investigation. *Id.* § 100.7(c).  If, after an investigation, the Office determines there is insufficient evidence to support a conclusion that the recipient failed to comply with the applicable federal statute(s) and regulation(s), the Office will inform the recipient and the complainant in writing explaining its decision. *See id.* § 100.7(d)(2). *see also* Case Processing Manual Article III, § 303.

The Case Processing Manual provides the Office "with the procedures to promptly and effectively investigate and resolve complaints. Case Processing Manual at 2 (Introduction), https://www.ed.gov/sites/ed/files/about/offices/list/ocr/docs/ocrcpm.pdf (last accessed Oct. 11, 2024).  The Case Processing Manual apprises Office employees how to docket and acknowledge complaints (§§ 101-103); how to determine whether the Office has jurisdiction over the complaint

(§§ 104-105), how to determine whether the complaint is timely (§§ 106-107), how to determine whether the allegations of the complaint (clarified, if necessary) contain sufficient detail and state a violation of one of the laws or regulations the Office enforces (§ 108); and how to notify the complainant whether an allegation is being opened for investigation or dismissed (§§ 108-109). In addition, the Case Processing Manual identifies grounds where the Office will or may dismiss an allegation (or close an allegation already opened for investigation). These include: the pendency in the Office (or recent resolution by the Office) of another complaint addressing the same allegations against the same recipient, the pendency of the same allegations against the same recipient with another federal or state agency or court, a pattern of meritless allegations by the same complainant, mootness, etc. (§ 110(a)-(p)). The Case Processing Manual is used to process nearly 20,000 complaints annually. *See* Dep't of Education, Office for Civil Rights, *Fiscal Year 2023 Annual Report to the President and the Secretary*, at 6 (2024), https://www.ed.gov/sites/ed/files/about/reports/annual/ocr/report-to-president-and-secretary-of-education-2023.pdf (last visited Oct. 23, 2024).

The Case Processing Manual is updated periodically by the Office. The Office last updated it on July 18, 2022. As part of that update, the Office removed Section 307, which had appeared in the prior two versions of the Manual (issued on November 19, 2018, and August 26, 2020, respectively) that permitted a complainant to appeal to another decision maker in the Office if the Office found insufficient evidence of a violation or if the Office dismissed the complaint on some, but not all, of the grounds identified in the Case Processing Manual. *See* https://www.ed.gov/sites/ed/files/about/offices/list/ocr/docs/ocrcpm-20181119.pdf (last visited Oct. 23, 2024); https://www.ed.gov/sites/ed/files/about/offices/list/ocr/docs/ocrcpm-20202608.pdf (last visited Oct. 23, 2024).

II.    <u>**The Brandeis Center's Administrative Complaint**</u>

On November 9, 2023, the Center filed an administrative complaint with the Office alleging that the University of Pennsylvania discriminated against students and staff on the basis of national origin (shared Jewish ancestry) by failing to respond to incidents of antisemitic harassment during the fall 2023 semester. Compl. ¶¶ 12, 32, 60; *see also* Compl. Ex. A (ECF No. 1-1). On November 15, 2023, the Office completed its evaluation of the complaint, pursuant to Article I of the Case Processing Manual, and notified the Center that it was opening the complaint for investigation. Compl. ¶ 62; Compl. Ex. B (ECF No. 1-2).

On December 5, 2023, two University students filed a federal complaint in the United States District Court for the Eastern District of Pennsylvania against the University that similarly alleged that the University failed to respond to incidents of harassment based on shared Jewish ancestry during the fall 2023 semester. *See Yakoby v. Univ. of Penn.*, Civ. A. No. 23-4789 (E.D. Pa.); *see also* Compl. ¶¶ 64-65. Plaintiffs describe that federal complaint as "echoing many of the same allegations" that the Center had filed in its administrative complaint. Compl. ¶ 7.

On January 2, 2024, after reviewing the federal complaint, the Office notified the Center that it was dismissing the Center's complaint pursuant to its Case Processing Manual § 110(h):

> Where a class action with the same allegation(s) has been filed against the same recipient with state or federal court and the relief sought is the same as would be obtained if OCR were to find a violation regarding the allegation(s). An allegation(s) may be re-filed with [the Office for Civil Rights] within 60 days following termination of the court proceeding if there has been no decision on the merits or settlement of the state or federal allegation(s). Dismissal with prejudice is considered a decision on the merits.

*See* Compl. ¶¶ 67-69. The Office's January 2, 2024, letter to the Center acknowledged that the *Yakoby* litigation was not formally "filed as a class action," but noted that it sought "systemic relief" against the same recipient "based on the same allegations." Compl. Ex. D (ECF No. 1-4). The letter noted that the allegations may be re-filed with the Office within sixty days following

termination of the court proceeding if there has been no decision on the merits or settlement of the allegations.

### III.    <u>This Action</u>

On July 9, 2024, Plaintiffs filed this action challenging the Office's dismissal of the administrative complaint filed by the Center under the APA, 5 U.S.C. § 706(2). Plaintiffs allege they are a national civil rights organization with a separate membership organization and that their members have been victimized by antisemitic activities at the University.  Compl. ¶ 9.

In Count I, Plaintiffs contend that the Office's dismissal of the administrative complaint was arbitrary and capricious, arguing that because the *Yakoby* lawsuit was not formally pled as a class action, the Case Processing Manual requires the Office to continue its investigation into the allegations against the University of Pennsylvania. *See* Compl. ¶¶ 84-101. Plaintiffs also claim that the Office failed to adequately explain its basis for dismissal of the Center's administrative complaint. *Id*. ¶ 96. As a remedy, Plaintiffs seek reinstatement of the Center's previously dismissed complaint and resumption of the Office's investigation as well as reinstatement of all other Office investigations "unlawfully dismissed under Section 110(h) [of the Case Processing Manual] since October 7, 2023." Compl. ¶17.

In Count II, Plaintiffs allege the Office's removal of the appeal provision from its Case Processing Manual in July 2022 violated the notice and comment rulemaking requirement under the APA. In Count III, Plaintiffs allege that their due process rights under the Fifth Amendment were violated when the Office "improperly abandoned" its investigation into the University of Pennsylvania, without allowing for an appeal. Compl. ¶ 115. Plaintiffs request that the Court "preliminarily and permanently enjoin" Defendants from "removing the appeal right provided by Section 307 of the November 2018 Manual." Compl. at 30.

## LEGAL STANDARDS

### A.    Rule 12(b)(1)

To survive a motion to dismiss under Rule 12(b)(1), a plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear its claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *U.S. Ecology, Inc. v. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000). A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Id*. at 13–14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987) (alteration in original)). Additionally, unlike when considering a motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharms. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005); *see also Venetian Casino Resort, LLC v. EEOC*, 409 F.3d 359, 366 (D.C. Cir. 2005) ("[G]iven the present posture of this case—a dismissal under Rule 12(b)(1) on ripeness grounds—the court may consider materials outside the pleadings."). Thus, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

The issue of constitutional standing is a jurisdictional one, because "the defect of standing is a defect in subject matter jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) (citation omitted). "The court must address the issue of jurisdiction as a threshold matter, because absent jurisdiction the court lacks the authority to decide the case on any other grounds." *Am. Farm Bureau v. EPA*, 121 F. Supp. 2d 84, 91 (D.D.C. 2000) (citation omitted).

**B.**    **Rule 12(b)(6)**

A motion made under Rule 12(b)(6) tests whether a complaint has successfully "state[d] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While detailed factual allegations are not necessary to withstand a Rule 12(b)(6) challenge, a plaintiff must nonetheless provide "more than labels or conclusions" or a "formulaic" recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible only when a plaintiff pleads factual content that enables the Court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the Court must assume that any "well-pleaded factual allegations" in a complaint are accurate, conclusory allegations "are not entitled to the assumption of truth." *Id.* at 679.

Importantly, citation of materials outside of the Complaint does not convert a Rule 12(b)(6) motion to dismiss into one for summary judgment if the cited materials were attached to the Complaint, were incorporated by reference in the Complaint, or concern matters of which the Court may take judicial notice. *See Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*, 103 F. Supp. 3d 113, 117 (D.D.C. 2015) (citing *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007)); *Ndondji v. Interpark Holdings, Inc.*, 768 F. Supp. 2d 263, 272 (D.D.C. 2011); *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (permitting consideration of documents "referred to in the complaint and [] integral to [the plaintiff's] claim").

**ARGUMENT**

I.    **Count I Should be Dismissed Because Plaintiffs Have an Adequate, Alternative Remedy that Precludes APA Review; Additionally, the Department's Actions are Committed to Agency Discretion by Law**

The Office for Civil Rights has actively been investigating and resolving complaints that educational institutions have engaged in discrimination based on shared ancestry (e.g., antisemitism, anti-Arab bias) in violation of Title VI.  Since January 2021, the Office has secured sixteen resolution agreements from schools that address shared ancestry discrimination and issued multiple letters to educational institutions regarding their responsibilities to respond to antisemitic harassment.  https://www.ed.gov/about/offices/list/ocr/sharedancestry.html (last visited Oct. 24, 2024). The Center's Chairman praised the Office a month after this lawsuit was filed for "sending a message to universities" through its enforcement work "that they need to take antisemitism allegations very, very seriously."   https://www.chronicle.com/article/why-colleges-need-to-look-out-for-hostile-environments (last visited Oct. 23, 2024).

The Office has more than 100 open investigations pending regarding shared ancestry complaints.  https://www.ed.gov/about/offices/list/ocr/sharedancestry-list (last visited Oct. 24, 2024). Based on a provision of its Case Process Manual reflecting the Office's intent to effectively allocate its limited investigative resources and to avoid any friction with pending litigation, the Office exercised its discretionary authority not to continue its investigation of the Center's administrative complaint regarding the University of Pennsylvania once litigation against the University raising the same systemic allegations had been commenced.  For the reasons discussed below, that discretionary decision is not subject to review under the APA and Count I should be dismissed.

### A.    An Adequate Remedy Precludes Plaintiffs' APA Claims

The APA provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. Because Plaintiffs have an "adequate remedy in a court" to address their injury— a Title VI lawsuit against the University of Pennsylvania—their APA claims are precluded.

In a trio of cases, the D.C. Circuit has held that a private suit against the entity that allegedly engaged in the unlawful discrimination under Title VI, Title IX, or Section 504 is an adequate remedy that precludes APA relief against the federal agency. *See Wash. Legal Found. v. Alexander*, 984 F.2d 483, 486 (D.C. Cir. 1993); *Women's Equity Action League v. Cavazos*, 906 F.2d 742, 750-51 (D.C. Cir. 1990); *Council of & for the Blind of Del. Cnty. Valley, Inc. v. Regan*, 709 F.2d 1521, 1532-33 (D.C. Cir. 1983) (en banc). Citing *Women's Equity*, the D.C. Circuit recently summarily affirmed the dismissal of claims against the Office because of the availability of a private lawsuit against the educational institution. *See Skewes-Cox v. Georgetown Univ. L. Ctr.,* No. 24-5065, 2024 WL 4248506, at *1 (D.C. Cir. Sept. 18, 2024) ("The district court correctly concluded that a Rehabilitation Act suit against the allegedly discriminating entity provides an adequate alternative remedy that precludes relief under the Administrative Procedure Act."); *see also Albra v. Off. for C.R.,* No. 18-5112, 2018 WL 6720648, at *1 (D.C. Cir. Dec. 18, 2018) ("a suit against the allegedly discriminating entities under the Rehabilitation Act" provides "an adequate alternative remedy that precludes APA relief.").

Other Courts of Appeals confronted with the same issue are in accord. *See Marlow v. Dep't of Educ.*, 820 F.2d 581, 583 n.3 (2d Cir. 1987) ("Marlow clearly has an adequate remedy in court: he may seek relief under section 504 of the Rehabilitation Act directly against the Board."); *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 191-92 (4th Cir. 1999) (dismissing APA claim seeking to compel agency to carry out its supervisory duties under Title VI because

the plaintiff could bring a direct action against the funding recipients, which was not only adequate but "preferable"); *Bochra v. Dep't of Educ.*, No. 22-2903, 2024 WL 808061, at *2 (7th Cir. Feb. 27, 2024), *petition for cert. filed*, No. 24-5703 (Sept. 30, 2024) (Office for Civil Rights complainant "has no claim under the APA against the Department because, as the district court ruled, he has an alternative remedy. . . If Bochra believes that the law school discriminated against him and the Department did not remedy it, then he could have sued the law school, as a recipient of federal funds, under Title VI of the Civil Rights Act of 1964 to achieve the remedy he seeks." (citing *Women's Equity*)); *Stimac v. Barr*, 10 F.3d 808, 1993 WL 483837, at *1 (9th Cir. Nov. 23, 1993) (complainant has no action against the Office for Civil Rights under the APA because "he has an adequate remedy against Gavilan College"); *Renteria v. Donahue*, 92 F.3d 1197, 1996 WL 446905, at *2 (10th Cir. Aug. 8, 1996) (complainant alleging her complaint was dismissed by Office for Civil Rights in violation of its complaint procedures "has no right of direct action against the [Office for Civil Rights] under the Administrative Procedure Act because she has another adequate remedy available in the form of an action against [the university]").

Despite this weight of authority, Plaintiffs allege that private litigation is insufficient because it has different remedies (such as fund termination) than those that are available to the Office and there are some differences in the substantive legal standards (Compl. ¶¶ 93-95). But then-Judge Ruth Bader Ginsburg explained in *Women's Equity,* 906 F.2d at 751, that the remedies available to a plaintiff in a private lawsuit against the educational institution need not be identical to the remedies the Office may obtain in administrative enforcement for the private lawsuit to be adequate; in fact, private lawsuits may be "less effective in providing systemic relief" and still afford "an adequate, even if imperfect" remedy. As the D.C. Circuit later summarized, "third-party suits are an adequate remedy for the alleged victims of statutory violations, like unlawful

discrimination, because they provide relief of 'the same genre' as that offered by an APA claim.'" *Garcia v. Vilsack*, 563 F.3d 519, 525 (D.C. Cir. 2009) (quoting *Women's Equity*). This is particularly true when, as here, "Congress chooses to grant those allegedly aggrieved by agency failure to remedy the wrongs of a regulated third parties a private cause of action against those third parties." *Id.*

Plaintiffs note that the Office can find violations of Title VI's disparate impact regulation even though that regulation is not privately enforceable (Compl. ¶ 94). Be that as it may, Plaintiffs did not allege their administrative complaint raised any allegations of a disparate impact nor did the Office indicate it had opened such an investigation. Under those circumstances, the inability for Plaintiffs to bring a civil action to enforce the disparate impact standard is not relevant to whether Plaintiffs have an adequate remedy. *See Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 946 (D.C. Cir. 2004) (following *Women's Equity* to dismiss an APA suit when "the only policy [plaintiffs] wish to enforce in this case [against educational institutions] is the prohibition against intentional discrimination and the equal opportunity requirements found in Title IX and the 1975 Regulations"); *Zadoorian v. Gwinnett Tech. Coll.,* No. 22-14206, 2024 WL 1554362, at *8 (11th Cir. Apr. 10, 2024) ("because Zadoorian's [Office of Civil Rights] complaint related to intentional discrimination, she had an adequate alternative remedy in the form of a private suit against GTC," which *"*precluded Zadoorian from filing a claim under the APA due to sovereign immunity").

In sum, because Plaintiffs have an adequate remedy, their APA claims are precluded.

## B. Plaintiffs' Claims Lack Merit Because the Department's Actions are Committed to Agency Discretion by Law

The APA provides that judicial review is not available where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). "[A]n agency's decision not to take

enforcement action should be presumed immune from judicial review under § 701(a)(2)," and that presumption may only be rebutted where the "substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." *Chaney*, 470 U.S. at 832-33.

Courts have long recognized that the Department's investigations and resolutions of individual complaints are the type of agency action committed to agency discretion. *See Bochra* 2024 WL 808061, at *2 (Office for Civil Rights complainant cannot challenge closure of administrative complaint because "courts may not review non-prosecution decisions that by statute are committed to the agency's discretion, as here."); *Am. Disabled for Attendant Programs Today v. Dep't of Hous. & Urb. Dev.*, 170 F.3d 381, 385-87, n.8 (3d Cir. 1999) (allegation that agency's Office for Civil Rights failed to investigate complaints that "indicate[d] a possible failure to comply with this part" was not reviewable under APA because "Congress has provided no guidelines, or law to apply, to constrain [the agency's] decision to investigate violations of its regulations"); *Marlow*, 820 F.2d at 582–83 ("under *Chaney* and section 701(a)(2) of the APA, review of the Department's discretionary disposition of Marlow's complaint is not available," because "neither the statute nor the regulations impose significant substantive limitations on the Department's investigation and resolution of individual complaints of discrimination").

Applying *Chaney*, this Court recently held twice that it could not review claims that federal agency civil rights offices improperly closed a complainant's discrimination complaint because such decisions were exercises of discretionary enforcement powers. *See Payne v. Vilsack*, Civ. A. No. 21-1571 (RC), 2023 WL 6160012, at *4 (D.D.C. Sept. 21, 2023) ("Even if the Court were to assume that the [agency's civil rights office] erroneously closed Mr. Payne's discrimination complaint," APA review was not available because there was no "'substantive statute' that provides specific 'guidelines for the agency to follow in exercising its enforcement powers'")

(quoting *Chaney*)); *Payne v. Becerra*, Civ. A. No. 22-0869 (RC), 2023 WL 3376630, at *5 (D.D.C. May 11, 2023) (complainant seeking "APA review of [agency's Office for Civil Rights] decision to close his discrimination complaint following an investigation" could not proceed because action was committed to agency discretion by law), *aff'd on other grounds,* No. 23-5131, 2024 WL 409404 (D.C. Cir. Feb. 1, 2024).  The same is true in this case.

The question whether to open the administrative investigation in the first instance is unreviewable, as is the manner of the investigation, the manner the Office attempts to voluntarily resolve the complaint if it determined a violation, or even the method by which the Office would try to obtain relief if it was unsuccessful in reaching a voluntary resolution.  Plaintiffs attempt to pluck a single event out of this stream of interrelated discretionary activities and argue that that single decision can be subjected to judicial review under the APA to determine if it comports with their hyper-literalistic reading of the Case Processing Manual.  As this Court has explained, however, even alleged noncompliance with a regulation that is framed in mandatory terms regarding an administrative investigation does not overcome the *Chaney* presumption of non-reviewability when the supposedly mandatory requirement falls within "interrelated stages in the broader category of [discretionary] enforcement decisions."  *Freedom Watch, Inc. v. McAleenan*, 442 F. Supp. 3d 180, 198, 199 (D.D.C. 2020).

Here, the Office relied on Section 110(h) of the Case Processing Manual to dismiss the complaint.  Section 110(h) affords the Department discretion to close an investigation where a "class action" has been filed against the same recipient in federal court.  The Office explained that because the plaintiffs in the *Yakoby* court litigation were seeking "systemic relief" against the same recipient based on the same allegations, the Office was treating the litigation as a class action.  Compl. Ex. D (ECF No. 1-4). Plaintiffs attempt to call the Department's actions into question

because the *Yakoby* litigation is not a "class action" under Rule 23, but this is hardly arbitrary. Subsequent to the dismissal of the administrative complaint, the plaintiffs in *Yakoby* filed an amended complaint that added an organizational plaintiff whose members "include current and former Jewish and/or Israeli Penn students." *Yakoby*, Am. Compl. ¶ 19, ECF No. 28 (Mar. 4, 2024). While the Office could not have relied on this amended complaint in making its decision, the expansion of the *Yakoby* litigation to include a membership association as a plaintiff is further confirmation that the Office's decision to view the litigation as akin to a class action was not arbitrary.

In any event, the term "class action" is not defined in the Manual, and there is nothing to indicate that this provision was intended to be read in its most formalistic sense rather than in a pragmatic, functional way to encompass a broad array of systemic litigation. Courts have long recognized that litigation need not be formally certified as a class action in order to provide class wide systemic relief. *See* 2 *Newberg & Rubenstein on Class Actions* § 4:35 (6th ed.). Neither the statute nor the regulations impose significant substantive limitations on the Department's investigation and resolution of individual complaints of discrimination. Accordingly, because the Office's decision to dismiss the Center's administrative complaint, subject to refiling in particular circumstances, is an act that is committed to agency discretion by law, Plaintiffs' APA claims in Count I are not subject to judicial review and should be dismissed.

In addition to seeking reinstatement of the Center's complaint, Plaintiffs appear to be seeking reinstatement of any administrative complaint dismissed on the same ground since October 7, 2023, regardless of the identity of the complainant or the subject-matter of the complaint, as well as an injunction dictating how the Office should treat other administrative complaints in the future, again regardless of the identity of the complainant or subject-matter of

the complaint.  Compl. ¶¶ 17, 118(b), (d), (e). Plaintiffs plainly lack standing to seek such relief

on behalf of unidentified third parties for failure to identify its own particularized injury-in-fact.

*See Spokeo, Inc. v. Robins*, 578 U.S. 330, 337-39 (2016).

## II.    Plaintiffs Lack Standing To Mount a Challenge To the Process Used By the Office In Changing the Case Processing Manual and the Office Complied With the APA In Changing the Manual

In Count II, Plaintiffs contend that the Department failed to comply with the notice and

comment provisions of the APA when it removed the previously existing appeal provision from

its Case Processing Manual.  Plaintiffs lack standing to make this claim and, in any event, the APA

did not require notice and comment for these changes.

### A.    Plaintiffs Cannot Rely on the Dismissal of the Administrative Complaint Against the University of Pennsylvania To Establish Standing To Raise Their Arguments About Removing a Right To Appeal From the Case Processing Manual

Standing requires, at a minimum, that plaintiffs show that they "(1) suffered an injury in

fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to

be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 337-38. The "injury in fact"

must be both "(a) concrete and particularized and (b) actual or imminent, not conjectural or

hypothetical." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180

(2000). An injury is "particularized" when it "affect[s] the plaintiff in a personal and individual

way," and it is "concrete" when it is "real, and not abstract," *Spokeo*, 578 U.S. at 339, although

"intangible injuries can nevertheless be concrete." *Id*. at 340.

First, as applied to the Center's dismissed administrative complaint, Plaintiffs lack standing

to challenge the process by which the Office removed the right to appeal because Plaintiffs would

not have been entitled to appeal that dismissal even if the Section 307 (the eliminated appeal

provision) had been in effect.  Thus, the removal of the appeal provision did not injure Plaintiffs and ordering it reinstated would not provide Plaintiffs any redress.

Plaintiffs ask the Court to order the Office to provide the appeal rights that were in effect in the November 2018 Manual.  Compl. ¶ 118(f), (g).  But Section 307 did not authorize a complainant, like Plaintiffs, to appeal all dismissals.   Section 108 of the November 2018 Manual identified eighteen different bases the Office was required to dismiss a complaint (§ 108(a)-(r)), including a slightly reworded version of the class action provision in then-§ 108(k).  Specifically, Section 108(k) of the November 2018 Case Processing Manual required dismissal of an allegation if: "A class action with the same or a similar allegation(s) with the same operative facts has been filed against the same recipient with state or federal court. An [Office for Civil Rights] complaint may be re-filed within 60 days following termination of the court proceeding if there has been no decision on the merits or settlement of the state or federal complaint."   And, Section 307 only authorized appeals of dismissals of six of those eighteen bases, and Section 108(k) was not one of them.  Specifically, Section 307 of the November 2018 Case Processing Manual stated: "Office for Civil Rights affords an opportunity to complainants to appeal determinations based on Section 303(a) and dismissals based on Sections 108(a), (b), (c), (d), (h), and (i)."  The subsequent removal of the November 2018 appeal rights for dismissals under other subsections of the Case Processing Manual had no effect on Plaintiffs.  Both then and now, the Case Processing Manual did not authorize an appeal for dismissals based on what is now Section 110(h). Thus, Plaintiffs lack standing to complain that these appeal rights were removed from the Case Processing Manual based on the dismissal of its administrative complaint against University of Pennsylvania.

**B.**     **Plaintiffs Fail to Identify Any Actual or Imminent Injury to Establish Standing Stemming from the Department's Removal of the Appeal Provision From the Case Processing Manual**

Looking beyond the dismissed administrative complaint the Center brought against the University of Pennsylvania, the Complaint does not identify any other administrative complaints pending with the Office that were brought by Plaintiffs or Plaintiffs' members.  Nor does the Complaint contain any allegations, much less nonconclusory allegations, that there is any substantial risk that they will bring such complaints imminently.  The Complaint also fails to offer any basis for this Court to determine whether there is a substantial risk that such complaints, if filed, would be dismissed on one of the grounds where the Office had previously authorized appeals.  These omissions require dismissal for lack of standing.

The factual allegations asserted in the Complaint do not provide any link between the alleged injury (removal of appeal rights) and the Plaintiffs.  To the extent Plaintiffs seek to assert standing as an organization or on behalf of their members or both, the complaint is devoid of sufficient facts to satisfy standing under either theory. An organization wishing to prove standing in its own right "must allege a 'concrete and demonstrable injury to the organization's activities' that is 'more than simply a setback to the organization's abstract social interests.'" *Am. Anti-Vivisection Soc'y v. Dep't of Agric.*, 946 F.3d 615, 618 (D.C. Cir. 2020) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). For example, Plaintiffs allege that the Center expended considerable resources in responding to antisemitic activities at the University, including "counseling aggrieved students and professors, raising public awareness of the administration's misconduct, requesting public documents to better understand Penn's violations, and incurring out-of pocket expenses." Compl. ¶ 19. But those actions have no relation to any action taken or not taken by the Department or the Office—rather, those activities comfortably fit within the

Center's mission and seemingly would have occurred regardless of whether the Office continued its investigation into the University's activities or not.

To assert standing on behalf of its members, an organization must allege that: (1) "'its members would otherwise have standing to sue in their own right;' (2) 'the interests it seeks to protect are germane to the organization's purpose;' and (3) 'neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Ctr. for Sustainable Econ. v. Jewell*, 779 F.3d 588, 596 (D.C. Cir. 2015) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). The Complaint alleges harm caused only by the University of Pennsylvania, not the Defendants. As such, no order by this Court would address this injury. Moreover, the Complaint does not allege any of the elements to establish organizational standing on behalf of its members.

To the extent Plaintiffs allege they suffered a procedural injury because they were denied an opportunity to participate in notice and comment rulemaking, they fail to connect it to a concrete interest. To be sure, if the APA did require the Office to go through notice and comment rulemaking before it could change its Case Processing Manual (which it does not), Plaintiffs would have been denied the opportunity to participate in that process. But the "[d]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right in vacuo—is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009); *see also Sierra Club v. EPA*, 754 F.3d 995, 1002 (D.C. Cir. 2014) (holding that deprivation of the chance to comment on a proposed regulation alone was not sufficient to establish standing) (cleaned up). "In other words, to confer standing '[a] procedural injury. . . must be tethered to some concrete interest adversely affected by the procedural deprivation.'" *Ctr. for Biological Diversity v. Haaland*, 849 F. App'x 2, 3 (D.C. Cir. 2021)

(quoting *WildEarth Guardians v. Jewell*, 738 F.3d 298, 305 (D.C. Cir. 2013)). To establish causation in a procedural injury case, the plaintiff must connect the agency's decision "to some substantive government decision that may have been wrongly decided because of the" procedural injury and must connect "that substantive decision to the plaintiff's particularized injury." *WildEarth Guardians*, 738 F.3d at 306 (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 668 (D.C. Cir. 1996)). As noted above, Plaintiffs fail to do so here. They have identified no particularized injury to them that flows from any change in appeal rights from those in effect in November 2018—either in the dismissal of the administrative complaint filed by the Center (which would not have been appealable in November 2018) or to any other administrative complaint filed by the Plaintiffs.

### C.    The Department Was Not Required to Provide Notice and Comment Regarding Changes to Its Internal Case Processing Manual

Even if the Court found that Plaintiffs had sufficiently alleged standing to assert their APA claims in Count II, the claim nevertheless fails on the merits. Although federal agencies ordinarily must provide the public with notice of a proposed rule and the opportunity to submit comments on it, *see* 5 U.S.C. § 553, the APA makes an exception for, among others, "rules of agency organization, procedure, or practice." *Id*. § 553(b)(3)(A). The Case Processing Manual generally, and the elimination of the right to appeal specifically, is a rule of procedure.

This statutory exception for procedural rules "was provided to ensure that agencies retain latitude in organizing their internal operations." *Nat'l Sec. Counselors v. CIA*, 931 F. Supp. 2d 77, 106-07 (D.D.C. 2013) (quoting *Batterton v. Marshall*, 648 F.2d 694, 707 (D.C. Cir. 1980)). The D.C. Circuit has stressed that the "'critical feature'" of a procedural rule is that it cannot "alter the rights or interests of parties, although it may alter the manner in which the parties present themselves or their viewpoints to the agency." *Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. Nat'l*

*Lab. Rels. Bd.*, 57 F.4th 1023, 1034 (D.C. Cir. 2023) (quoting *James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 280 (D.C. Cir. 2000)). Courts have found that "agency rules that impose 'derivative,' 'incidental,' or 'mechanical' burdens upon regulated individuals are considered procedural, rather than substantive." *Nat'l Sec. Counselors*, 931 F. Supp. 2d at 107 (cleaned up). By contrast, when a "rule imposes substantive burdens, encodes a substantive value judgment, trenches on substantial private rights or interests, or otherwise alters the rights or interests of parties, it is not procedural for purposes of the section 553 exemption." *Am. Fed'n of Lab.*, 57 F.4th at 1034-35.

Recently, the D.C. Circuit examined whether the National Relations Labor Board's 2019 "Representation-Case Procedures, Final Rule" which addressed the representation election process, was procedural or substantive. *Am. Fed'n of Lab.*, 57 F.4th at 1035. The court determined that three provisions, "those regarding employers' production of voter lists, the delayed certification of election results, and who may serve as election observers," were substantive because they affected the substantive rights of the regulated parties, the employers, unions, and employees, "in relation to one another." *Id*. It distinguished those from provisions that related to "internal house-keeping," including requiring the agency to resolve election-related disputes between the parties before an election (prior to the 2019 rule they were generally resolved afterward) and the creation of a presumptive waiting period between when an election was directed and when it was held, in order to provide the agency time to resolve those disputes. *Id*. at 1044-45.

Applying these principles here, the elimination of the opportunity to appeal the Office's dismissal of an administrative complaint is a "rule of agency procedure" or "procedural rule" exempt from the APA's notice and comment requirements. As an initial matter, there is nothing in the Department's regulations that mentions a right of appeal or requires the Department to provide

complainants with the right to appeal. *See* 34 C.F.R. § 100.7. The elimination of the opportunity

to appeal simply delineated the way the Center and complainants "present[ed] themselves or their

viewpoints to" the Office by eliminating their opportunity to appeal complaints dismissed by the

agency various grounds. *See, e.g., Inova Alexandria Hosp. v. Shalala*, 244 F.3d 342, 349-50 (4th

Cir. 2001) (affirming dismissal of hospital's notice and comment challenge to a rule that permitted

Provider Reimbursement Review Board to dismiss untimely appeals of Medicare reimbursement

challenges, reasoning that the challenged provision "was a procedural rule for handling appeals"

and did not alter the substantive standard applied to such challenges).

Plaintiffs' conclusory statement that the challenged provision is "not a rule of agency

organization, procedure, or practice" (Compl. ¶ 109) does not alter this conclusion. That is

precisely the type of procedural rule that is exempted from the APA's notice and comment

requirement. *See e.g., Am. Fed'n of Lab.*, 57 F.4th at 1034; *Nat'l Sec. Counselors*, 931 F. Supp. 2d

at 106-07 (concluding that, although potentially burdensome, agency's provision governing the

Freedom of Information Act ("FOIA") fee structure imposed in connection with mandatory

declassification review is a procedural rule that does not adversely affect "those interests ultimately

at stake in the agency proceeding"); *Pub. Citizen v. Dep't of State*, 276 F.3d 634, 641 (D.C. Cir.

2002) (holding that because the agency's "date of request cut-off" policy applied to all FOIA

requests, making no distinction between requests on the basis of subject matter, it clearly encodes

no substantive value judgment, and therefore was properly promulgated without notice and

comment (cleaned up)).

Also, even if Plaintiffs prevail on this claim, it is unclear the Court can award the relief

they have sought. They ask for reversion to the appeals provision of the November 2018 Case

Processing Manual, Compl. ¶ 118(g), but this Court may take judicial notice that that Manual also

did not go through notice and comment.  It is not clear why the Court would have the power to order the Office to follow a version of the Manual that suffers the same supposed procedural flaws as the challenged version the Office currently follows.

Accordingly, because the Case Processing Manual generally, and the right to appeal specifically, amply falls within the APA's exception for procedural rules, Count II should be dismissed.

### III. Plaintiffs' Fifth Amendment Due Process Claim Fails for Lack of Standing and On The Merits

In Count III, Plaintiffs allege that Defendants violated their Fifth Amendment rights to due process when the Office removed the appeal provision from its Case Processing Manual, depriving Plaintiffs of notice and the opportunity to be heard. *See e.g.,* Compl. ¶¶ 115-116.

For the same reasons discussed *supra* § II, Plaintiffs lack standing to seek a declaration that eliminating the November 2018 appeal rights violated the Due Process Clause and an injunction prohibiting the Office from removing the appeal rights provided by the November 2018 Manual. Compl. ¶ 118(f), (g). Plaintiffs allege no facts suggesting that they have or will file other complaints and that those complaints have or will be dismissed on grounds where the Office previously provided appeals in the November 2018 Manual.

In any event, Plaintiffs can point to no liberty or property interest they have, an essential element of any due process claim. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  Plaintiffs point to the Department's regulations as one source of that interest, *see* Compl. ¶ 114 but provide no support for the idea that this regulation can create a constitutionally cognizable interest in having a federal agency investigate another entity's alleged deprivation of their rights. To the contrary, the D.C. Circuit has made clear that a plaintiff "must allege more than the deprivation of the expectation that the agency will carry out its duties." *Women's Equity*,

906 F.2d at 752 (quoting *Council of & for the Blind*, 709 F.2d at 1533-34). Otherwise, "court[s] would be swamped with constitutional claims because every agency deviation from the statutory norm would raise constitutional questions." *Id.* "Accordingly, to the extent that plaintiff is arguing he had a property or liberty right to have [the Office's] investigation continue or be conducted in a particular way, his claim has no foundation in law[.]" *Cunningham v. Riley*, 98 F. Supp. 2d 554, 560 (D. Del. 2000), *aff'd*, 29 F. App'x 100 (3d Cir. 2002).

There is no liberty or property interest at stake regarding administrative enforcement of these civil rights laws because an "agency's failure to process [individuals'] complaints does not extinguish their statutory rights . . ., it merely denies them the assistance of the agency in vindicating those rights." *Women's Equity*, 906 F.2d at 752 (cleaned up; quoting *Council of & for the Blind*, 709 F.2d at 1533-34). Thus, in *Women's Equity*, the D.C. Circuit rejected the argument that the Office's purported shortcomings in responding to Title IX complaints violated the Fifth Amendment, holding that "an agency's failure to process discrimination complaints in the manner required by federal statutes and regulations does not deprive complainants of constitutional rights." *Id.* The same is true here.

As discussed above, Plaintiffs may vindicate their rights by filing a lawsuit against the university they believe violated their Title VI rights. Whether the Office provides for internal appellate review of its decision to investigate a claim of discrimination (or not), therefore, ultimately has no bearing on Plaintiffs' "opportunity to be heard." *See, e.g., Council of & for the Blind*, 709 F.2d at 1533-34 (quoting with approval *Francis-Sobel v. Univ. of Me.*, 597 F.2d 15, 18 (1st Cir. 1979) (holding that regardless of EEOC's actions, plaintiff was not deprived of any interest she had independently nor did the EEOC deny her benefits to give rise to a constitutional claim)); *Connor v. EEOC*, 736 F. Supp. 570, 573 (D.N.J. 1990) (rejecting plaintiff's claims that

the EEOC violated his Fifth Amendment rights when it denied his request for rehearing because the EEOC did not "affect his substantive discrimination claim in any way" as the EEOC is "merely a conduit which funnels discrimination claims to federal court" and because the plaintiff still had a "vital federal remedy" his Fifth Amendment claims could not proceed).

Moreover, even if the Court found Plaintiffs had alleged standing and determined that Plaintiffs had alleged the existence of a liberty or property interest sufficient to invoke the Due Process Clause's protection, Plaintiffs did not make sufficient allegations that due process entitles them to an administrative appeal of some or all the Office's decisions. Due process is not a concept that is "unrelated to time, place and circumstances" but instead is "flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). Thus, the form of notice and hearing required in each circumstance requires a balancing of the competing public and private interests involved. "Under the *Mathews* balancing test, a court evaluates (A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake." *Nelson v. Colorado*, 581 U.S. 128, 135 (2017). As noted above, the D.C. Circuit's decision in *Women's Equity* establishes that the private interest affected is not significant considering the alternative private right of action available to the Plaintiffs against the alleged discriminator. In addition, Plaintiffs' complaint is bereft of any allegations that touch on the second or third factors. They offer no factual allegations concerning the risk of error generally, nor how the right to appeal would reduce that error. Further, even if Plaintiffs could make non-conclusory allegations that some "marginal gains from affording an additional procedural safeguard" would occur, due process does not require that additional procedure if it is "outweighed by the societal cost of providing such a safeguard." *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 321

(1985). But Plaintiffs make no allegations about the costs to the Office if it were required to offer appeals to some portion of the close-to 20,000 administrative complaints it receives annually.

Because Plaintiffs still maintain the ability to file their complaints with the Department and subsequently seek judicial redress for those complaints against the educational institution, regardless of how the Department handles them, Plaintiffs have not alleged they have a constitutionally cognizable interest or been provided insufficient process under *Women's Equity* and *Mathews*.

## CONCLUSION

For these reasons, Plaintiffs' complaint should be dismissed in its entirety.

Dated: October 25, 2024
Washington, D.C.

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:  _____ */s/ Brenda González Horowitz* _____
BRENDA GONZÁLEZ HOROWITZ
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2512

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LOUIS BRANDEIS CENTER, INC., et al.,

        Plaintiffs,

    v.                         Civil Action No. 24-1982 (RC)

DEPARTMENT OF EDUCATION, et al.,

        Defendants.

## **[PROPOSED] ORDER**

UPON CONSIDERATION of Defendants' motion to dismiss, and the entire record herein, it is hereby

ORDERED that Defendants' motion is GRANTED, and it is further

ODERED that Plaintiffs' Complaint is DISMISSED.


SO ORDERED.


_____
Date                                      RUDOLPH CONTRERAS
United States District Judge