- i -

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE LOUIS BRANDEIS CENTER, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF EDUCATION, et al.,<br><br>Defendants. | Civil Action No. 24-1982 (RC) |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS**

The Department of Education ("Department"), Miguel Cardona, in his official capacity as Secretary of the Department, and Catherine Lhamon, in her official capacity as Assistant Secretary of Education for Civil Rights, respectfully submit this reply in further support of Defendants' motion to dismiss ("Defs.' Mot.," ECF No. 12) the complaint filed by Plaintiffs the Louis D. Brandeis Center, Inc ("Center") and Jewish Americans for Fairness in Education (collectively, "Plaintiffs") asserting claims under the Administrative Procedure Act ("APA") and the Fifth Amendment's Due Process Clause.  With respect to Plaintiffs' APA claim, that the dismissal of their complaint by the Department's Office for Civil Rights ("Office") was arbitrary and capricious, their arguments fail to overcome binding precedent that the dismissal is not subject to judicial review because Plaintiffs have an adequate alternative remedy–suit directly against the University of Pennsylvania. Alternatively, the Office's decision is unreviewable because it is committed to agency discretion under *Heckler v. Chaney*, 470 U.S. 821, 828 (1985).

As to Plaintiffs' second claim, that the Office's removal of the appeal provision from its Case Processing Manual in July 2022, violated the notice and comment rulemaking requirements of the APA, Plaintiffs have failed to allege any concrete injury resulting from that decision that would give Plaintiffs standing. Regardless, Plaintiffs' claim fails on the merits because the opportunity to appeal the Office's dismissal of an administrative complaint merely alters "the manner in which the parties present themselves or their viewpoints to the agency," and is thus exempt from the APA's rulemaking requirements as a "rule[] of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(3)(A).

Finally, as to Plaintiffs' third claim, that removal of the opportunity to appeal violated their Due Process rights, Plaintiffs point to no liberty or property interest of which they have been

deprived by the absence of an administrative appeal. Moreover, as with their second claim, Plaintiffs have failed to allege standing. In sum, the Court should dismiss this action in its entirety.

## ARGUMENT

**I.      The Availability of a Private Action Against the University of Pennsylvania Is an Adequate, Alternative Remedy that Precludes APA Review; Additionally, the Office's Dismissal of Plaintiffs' Complaint Was within the Office's Unreviewable Discretion**

    **A.      Courts Have Long Held that a Private Action Against the Discriminating Institution Is an Adequate Remedy**

As the Defendants explained in their motion, because Plaintiffs have an "adequate remedy in a court" to address their injury—a Title VI lawsuit against the University of Pennsylvania—their APA claims are precluded under a trio of D.C. Circuit cases. *See* Defs.' Mot. at 10-12; *see also Washington Legal Found. v. Alexander*, 984 F.2d 483 (D.C. Cir. 1993); *Women's Equity Action League v. Cavazos*, 906 F.2d 742 (D.C. Cir. 1990) ("*Women's Equity*"); *Council of and for the Blind of Delaware Cnty. Valley, Inc. v. Regan*, 709 F.2d 1521 (D.C. Cir. 1983) (en banc).

Plaintiffs' primary arguments against a private lawsuit being an adequate remedy are that private plaintiffs cannot seek termination of a university's federal funding and that private litigants face different legal standards than the Office. Plaintiffs' arguments miss the mark.

On the first point, Plaintiffs rely on *Alexander v. Sandoval*, 532 U.S. 275 (2001), as holding that private litigants may not seek the cessation of federal funding in actions against the recipient university. Even if *Sandoval* did so hold, it did not change the legal landscape. The D.C. Circuit made the same point a decade earlier. In *Women's Equity*, 906 F.2d at 750, the D.C. Circuit noted that the Supreme Court had "contrast[ed] two private remedies: suit against a discriminatory fund recipient to terminate the offending discrimination; and suit against the government to terminate federal funding." At no point did *Women's Equity* suggest there was a third private remedy: a suit against a discriminatory fund recipient to terminate federal funding. Indeed, *Women's Equity* held

that a "suit targeting specific discriminatory acts of fund recipients" is both "the only court remedy Congress has authorized for private parties" and an "adequate, even if imperfect, remedy." *Id*. at 751.

Further, after *Sandoval*, the D.C. Circuit followed *Women's Equity* and *Washington Legal Foundation* in *National Wrestling Coaches Ass'n v. Department of Educ*., 366 F.3d 930 (D.C. Cir. 2004), by dismissing an APA suit against the Department of Education because "the availability of a private cause of action directly against universities that discriminate in violation of Title IX constitutes an adequate remedy that bars appellants' case." *Id*. at 945. In so doing, the D.C. Circuit rejected plaintiffs' argument that *Women's Equity* was no longer good law because *Sandoval* "effectively eliminate[d]" the private right of action against the universities. The court described the argument as "notably strained" and held that *Sandoval* "explicitly recognized" that a "cause of action against universities remains available" to plaintiffs. *Id.* at 946. For these same reasons, the Court should reject Plaintiffs' misguided interpretation about *Sandoval*.

Third, the D.C. Circuit has continued to rely on these holdings to dismiss claims against the Office for Civil Rights. *See Skewes-Cox v. Georgetown Univ. L. Ctr.,* No. 24-5065, 2024 WL 4248506, at *1 (D.C. Cir. Sept. 18, 2024) ("The district court correctly concluded that a Rehabilitation Act suit against the allegedly discriminating entity provides an adequate alternative remedy that precludes relief under the Administrative Procedure Act."); *see also Albra v. Off. for C.R.,* No. 18-5112, 2018 WL 6720648, at *1 (D.C. Cir. Dec. 18, 2018) ("a suit against the allegedly discriminating entities under the Rehabilitation Act" provides "an adequate alternative remedy that precludes APA relief.").

- 3 -

The two other cases cited by Plaintiffs, *Bowen v. Massachusetts*, 487 U.S. 879 (1988), and *Humane Soc'y of the U.S.* v. *Vilsack*, 797 F.3d 4 (D.C. Cir. 2015), also provide no support for disregarding the trio of cases cited by Defendants.

*Bowen* was decided before *Women's Equity* and *Washington Legal Foundation*, and thus cannot justify disregarding the D.C. Circuit's holding in those cases. In *Bowen*, the Court found that a private action in the Court of Federal Claims was an inadequate alternative for purposes of the APA because the court lacked a district court's broader jurisdiction and equitable powers. By contrast, the alternative remedy here is a suit in district court. Moreover, the D.C. Circuit noted in *Garcia v. Vilsack*, 563 F.3d 519, 525 (D.C. Cir. 2009), that *Women's Equity* and *Council of and for the Blind* had, "consistent with *Bowen*," held that "an alternative adequate remedy at law exists where Congress chooses to grant those allegedly aggrieved by agency failure to remedy the wrongs of a regulated third parties a private cause of action against those third parties."

In *Humane Society*, 797 F.3d at 11, the D.C. Circuit held that plaintiffs were not required to exhaust administrative remedies under another statute before filing an APA claim against a federal agency because (1) there was "reason to doubt that the exhaustion provision applies to the plaintiffs' claims at all" and (2) neither of the remedies available under the statute "would provide plaintiffs anything like the relief they seek." Here, by contrast, a suit against the fund recipient would provide Plaintiffs the ultimate relief they seek—elimination of discrimination at the University of Pennsylvania.

Moreover, even if Plaintiffs face different legal standards in a private civil action than the Office would in an enforcement proceeding, the D.C. Circuit has long held that a private lawsuit against the educational institution affords plaintiffs with an adequate remedy, even though private lawsuits may be "more arduous, and less effective in providing systemic relief." *Women's Equity*,

906 F.2d at 750-51. Though the alternative remedy may be "imperfect," as *Women's Equity* recognized, the body of case law supports the notion that Plaintiffs' claims are more adequately raised in a suit against the discriminating entity rather than the Department.

In sum, because Plaintiffs have an adequate alternative remedy, Count I should be dismissed.

      **B.**      **The Office's Decision to Dismiss Plaintiffs' Administrative Complaint Was Committed to Its Discretion and Was, in any event, Consistent with its Case Processing Manual**

The APA provides that judicial review is not available where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). "[A]n agency's decision not to take enforcement action should be presumed immune from judicial review under § 701(a)(2)," unless a "substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." *Chaney*, 470 U.S. at 832-33. The Office's investigations and resolutions of individual complaints are "committed to agency discretion by law," and thus unreviewable. *See* Defs.' Mot. at 13. As this Court held in *Payne v. Vilsack*, Civ. A. No. 21-1571 (RC), 2023 WL 6160012, at *4 (D.D.C. Sept. 21, 2023), when Congress commits a type of agency decision, such as enforcement decisions, to that agency's discretion, judicial review of those decisions is not available. This is true even if an agency erroneously closes a complaint. *See id.* This case requires the same outcome.

Plaintiffs attempt to distinguish the cases cited in the Defendant's motion by focusing on differences that had no bearing on the courts' holdings, but this attempt fails. For example, Plaintiffs note that the federal agency closed the administrative complaints at issue in *Bochra* and *Payne v. Vilsack* due to insufficient evidence. *Bochra*, 2024 WL 808061, at *1; *Payne,* 2023 WL 6160012, at *3. Similarly, Plaintiffs point out that in *Marlow* the plaintiff was challenging the results of the investigation. *Marlow*, 820 F.2d at 582. But in each of these cases, the courts'

determination that the agency's decision was unreviewable under *Chaney* did not depend on the reasons the agency dismissed the complaints, what procedures the agency had followed when dismissing the complaint, or on what grounds the plaintiffs were challenging those dismissals. *Marlow*, 820 F.2d at 582-3; *Bochra,* 2024 WL 808061, at *2; *Payne v. Vilsack*, 2023 WL 6160012, at *4. Instead, the courts found in each case that these types of decisions were committed to agency discretion, and therefore unreviewable. *Id*.

Faced with contrary cases within this circuit, Plaintiffs rely instead on an out-of-circuit decision, *Pearl River Union Free School District*. v. *King*, 214 F. Supp. 3d 241 (S.D.N.Y. 2016). There, the district court held that the Office's regulations and Case Processing Manual provided sufficient judicially manageable standards to guide the court's review of the Office's decision. *Id.* at 256-7. But courts in this circuit have not adopted that approach. Instead, courts in this district have repeatedly held that plaintiffs who wish to "rebut the presumption against judicial review . . . must point to a 'substantive statute' that provides 'specific guidelines for the agency to follow in exercising its enforcement powers." *Payne*, 2023 WL 6160012 at *4 (quoting *Sierra Club v. Jackson*, 648 F.3d 848, 855 (D.C. Cir. 2011)). That standard controls here.

More relevant is this Court's decision in *Freedom Watch, Inc. v. McAleenan*, 442 F. Supp. 3d 180 (D.D.C. 2020).  There, a Department of Homeland Security immigration regulation provided that when the agency "receives a complaint from a third party [containing detailed factual allegations relating to a potential violation involving document fraud], it shall investigate only those complaints which, on their face, have a substantial probability of validity." *See also* 8 C.F.R. 270.2(b). Findings of a violation could lead to denaturalization or removal proceedings. *Freedom Watch*, 442 F. Supp. 3d at 198.  This Court held that "even if the Court found that the relevant conditions [in the regulation] were met here," plaintiff failed "to rebut *Chaney*'s controlling

- 6 -

presumption that this [civil] enforcement procedure confers discretion" on the agency. *Id*. at 198-199.  Plaintiff argued that the presumption did not apply because the mandatory language in the regulation about when to investigate was severable from any subsequent discretionary decision on whether to commence enforcement proceedings after an investigation was completed.  But this Court rejected that argument, explaining that there was no basis "for this separation of investigation from [enforcement], as opposed to considering them as interrelated stages in the broader category of enforcement decisions." *Id*. at 198.  It "strain[ed] credulity for the Court to imagine that a regulation promulgated by [the Department of Homeland Security] could *require* investigation (as Plaintiff urges), yet the statutory structure as a whole could bestow the agency with such broad discretion about whether to pursue removal or otherwise enforce the law." *Id*. The D.C. Circuit followed similar reasoning in *Women's Equity*. Plaintiffs in that case argued that "they seek no termination of funding," but only wanted the Office to "do the job Congress entrusted to them" by "promptly processing complaints." *Women's Equity*, 906 F.2d at 750.  But *Women's Equity* held that there was no distinction between the two because the investigation process "leads in the end to fund termination if voluntary compliance is not achieved." *Id*. Similarly here, there is no basis to consider the decision to dismiss an open investigation as anything but part of the interrelated stages in the broader category of enforcement decisions, starting with the decision whether to open an investigation, and concluding in a determination on the merits and, if a violation is found, seeking to fund termination (or another remedy) if voluntary compliance is not achieved.

Plaintiffs try to entice this Court to find it can rule on the merits of Count I (the APA claim) by repeatedly arguing that the Office's action closing the administrative investigation was so obviously erroneous that it requires correction.  But even if the merits were relevant to whether this Court had the power to review the decision (and they are not), dismissing Plaintiffs'

adminstrative complaint under § 110(h) of the Case Processing Manual was not arbitrary or capricious, nor is the Office's explanation of its decision a "*post hoc* rationalization" as Plaintiffs contend. Pls.' Opp. at 24 (ECF No. 14). When it dismissed Plaintiffs' administrative complaint, the Office explained it was doing so under § 110(h) even though the *Yakoby* litigation was not denominated a class action because the plaintiffs in the litigation raised the same allegations and sought systemic relief. *See* Compl., Ex. D at 1-2 (ECF No. 1-4). Plaintiffs argue that the history and structure of the Case Processing Manual show the Office's intent to use "class action" only in a formalistic sense because, in the current version of the Case Processing Manual, the Office eliminated the provision that expressly provided for dismissal when someone files a lawsuit raising "the same or similar allegations." *See* Pls.' Opp. at 19 n.11 (ECF No. 14) (citing the 2020 Case Processing Manual, § 110(j)). While it is true that the Office could have dismissed Plaintiffs' complaint under that section were the 2020 Case Processing Manual still in effect, § 110(j) does not mention systemic relief. Thus, the Office's decision to eliminate that provision has no bearing on whether "class action" in the current version Case Processing Manual § 110(h) can be read to apply to actions seeking systemic relief even without a formal invocation of Federal Rule of Civil Procedure 23.

**Accordingly, the Court should grant Defendants' motion and dismiss Count I.**

**II.     Plaintiffs Lack Standing to Challenge the Process Used by the Office in Changing the CPM and the Office Complied with the APA in Changing the Case Processing Manual**

In Count II, Plaintiffs contend that the Office failed to comply with the notice and comment provisions of the APA when it removed the previously existing appeal provision from its Case Processing Manual.  Plaintiffs lack standing to make this claim and, in any event, the APA did not require notice and comment for these changes.

### A. Plaintiffs Do Not Adequately Allege a Concrete Injury Tied to the Office's Changes to the Case Processing Manual

Count II of Plaintiffs' Complaint originally appeared to press a straightforward claim: (1) under the 2018 Case Processing Manual, Plaintiffs would have been able to appeal; (2) the 2020 Case Processing Manual eliminated all appeal rights; (3) the 2020 changes to the Case Processing Manual were done without required notice-and-comment; and therefore (4) the 2020 changes to the Case Processing Manual should be declared unlawful and the 2018 Case Processing Manual provisions about appeals should be reinstated, thus allowing Plaintiffs to file an administrative appeal. Compl. ¶ 118(c), (g).[1] But Defendants showed (Defs.' Mot. at 23-24), and Plaintiffs do not dispute in their response, that Plaintiffs could not have appealed the dismissal of their administrative complaint under the 2018 Case Processing Manual; while the 2018 Case Processing Manual authorized some appeals, a dismissal by the Office under the class action provision was not appealable. In other words, the changes between the 2018 and 2020 Case Processing Manuals did not injure Plaintiffs: the changes in the Case Processing Manual in 2020 did not cause Plaintiffs' to lose a right to appeal that they previously held; and reverting back to the 2018 Case Processing Manual would not redress Plaintiffs' inability to appeal. They thus fail all three elements of the standing inquiry.

Plaintiffs now pivot and argue in their response that their injury was the inability to participate in the process by which the Case Processing Manual was changed in 2020. Plaintiffs posit that if there had been notice-and-comment in 2020 on whether to eliminate administrative

---

[1] Plaintiffs did not address Defendants argument (Defs.' Mot. at 22) that even if Plaintiffs prevailed on that claim, it is unclear the Court could reinstate the appeals provision of the November 2018 Case Processing Manual, as they requested. Compl. ¶ 118(g). This is because the 2018 Case Processing Manual also did not go through notice and comment and thus suffers the same supposed procedural flaws as the challenged version the Office currently follows.

appeal completely, Plaintiffs would have taken that procedural opportunity to urge that the Office expand the existing appeals to include dismissals under § 110(h), the class action provision. Plaintiffs acknowledge that the failure to provide for notice and comment is a procedural injury that does not provide standing unless it is "tethered to some concrete interest adversely affected by the procedural deprivation." *Ctr. for Biological Diversity* v. *Haaland*, 849 F. App'x 2, at *3 (D.C. Cir. 2021) (internal citation omitted). But Plaintiffs point to no case where a plaintiff has shown that it had a concrete interest sufficient to challenge the absence of notice-and-comment when the agency proposal at issue, if adopted, would not have altered Plaintiffs' rights. While the redressability requirement is not applied as stringently regarding claims of procedural injury, it still has teeth. It is exceedingly speculative to suggest that the Office, which eliminated the right to appeal, would not only have preserved the existing right to appeal but would have expanded that right to § 110(h), the class action provision. In any event, declaring the 2020 Case Processing Manual unlawful and requiring Defendants to engage in notice-and-comment for any future changes to the appeal provision would not redress Plaintiffs' injury: they would still not be able to appeal and their administrative complaint would remain dismissed.

Plaintiffs argue that they have numerous other administrative complaints pending with the Office that could be dismissed and have standing to protect those complaints from putatively erroneous dismissals. Pls.' Opp. at 30. But, as Defendants pointed out in their motion, the Complaint at issue in this case does not identify any other administrative complaints pending with the Office that were brought by Plaintiffs or Plaintiffs' members. Plaintiffs, by pointing to complaints listed on the Office's website, seemingly concede that they failed to refer to these other administrative complaints in their Complaint.

Even if one accepts Plaintiffs' claim that they have other administrative complaints pending with the Office, that would not be sufficient to show standing. Plaintiffs argue that they "will either: (i) need to file a greater number of resource intensive lawsuits in federal courts instead of before [the Office] because of the risk that its [Office] cases will be lost because of [the Office's] case-dumping, or (ii) waste time and resources developing and filing an [Office] complaint, only to have to scramble to seek an alternative remedy in federal court (perhaps after a lapse in time of a year or more) simply because [the Office] has seized upon a late-filed complaint by an individual to dismiss a pending matter that the Brandeis Center had filed." Pls.' Opp. at 31. These allegations are not found in the operative complaint, and it is well established that a party may not amend their pleading via opposition to a dispositive motion. *See Pappas v. Dist. of Columbia*, 513 F. Supp. 3d 64, 91 (D.D.C. 2021) (citing *Kingman Park Civic Assoc. v. Gray*, 27 F. Supp. 3d 142, 160 n.7 (D.D.C. 2014)); *see also Coleman v. Pension Benefit Guar. Corp.*, 94 F. Supp. 2d 18, 24 n. 8 (D.D.C. 2000) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.").

And, it is important to remember, Plaintiffs do not challenge that § 110(h), the provision that allows the Office to dismiss administrative complaints when class action litigation is filed against the same recipient involving similar allegations. All they seek in Count II is the right to an administrative appeal of that dismissal to ensure the dismissal falls within the scope of that provision. So Plaintiffs' standing for Count II is contingent on the Complaint containing plausible, nonconclusory allegations that any of the administrative complaints they currently have pending with the Office would qualify (or are likely to imminently qualify) to be dismissed under the Office's interpretation of the class action dismissal provision but not Plaintiffs' alternative interpretation. There are no such allegations.

Plaintiffs must also plausibly allege that the Office would, in such a situation, exercise the discretion § 110(h) of the Case Processing Manual grants it to dismiss one of those other administrative complaints. Plaintiffs allege that their members' "civil rights have been limited by OCR's pattern of wrongfully dismissing campus antisemitism complaints." Compl. ¶ 23. But the Complaint does not include any nonconclusory allegations of a pattern of dismissals, must less wrongful dismissals. Instead, it contains only one reference to another administrative complaint, "the dismissal of a complaint brought against the University of California at Berkeley" but does not include any specifics about that administrative complaint, why its dismissal was wrongful, and how the existence of an appeal for dismissals under § 110(h) would have affected that dismissal. *Id.* ¶ 17.

Plaintiffs' Complaint also fails to allege how the Office's actions limit the Plaintiffs' civil rights. Plaintiffs argue that the elimination of appeal rights without notice and comment impaired their ability to provide services to their constituents and forced them to use their resources to counteract that harm. *See* Pls.' Opp. at 29-30 (citing *Nat'l Fed. of the Blind* v. *Dep't of Ed.*, 407 F. Supp. 3d 524 (D. Md. 2019)). The plaintiffs in *National Federation* alleged with specificity how the changes to the Case Processing Manual impacted their use of resources, including that they had to divert their resources to "identify, inform and advise their members about, and respond to" the changes to the Case Processing Manual. *Id.* at 528. But the Plaintiffs here failed to plead any facts sufficient to demonstrate standing.

Plaintiffs allege that the Center expended considerable resources in responding to antisemitic activities at the University, including "counseling aggrieved students and professors, raising public awareness of the administration's misconduct, requesting public documents to better understand Penn's violations, and incurring out-of pocket expenses." Compl. ¶ 19. But as

Defendants noted, those actions have no relation to any action taken or not taken by the Department or the Office— rather, those activities comfortably fit within the Center's mission and seemingly would have occurred regardless of whether the Office continued its investigation into the University's activities or not. *See* Defs.' Mot. at 25-26. Plaintiffs do not address this point.

The Complaint alleges harm caused only by the University of Pennsylvania, not the Defendants. As such, no order by this Court would redress this injury.

### B.     The Case Processing Manual and the Elimination of the Right to Appeal Is a Procedural Rule, Not Requiring Notice and Comment

Even if the Court found that Plaintiffs had sufficiently alleged standing to assert their APA claims in Count II, the claim nevertheless fails on the merits. *See* 5 U.S.C. § 553(b)(3)(A); *see also* Defs.' Mot. at 27-30

A procedural rule cannot "alter the rights or interests of parties, although it may alter the manner in which the parties present themselves or their viewpoints to the agency." *Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. Nat'l Lab. Rels. Bd.*, 57 F.4th 1023, 1034 (D.C. Cir. 2023) (quoting *James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 280 (D.C. Cir. 2000)). By contrast, when a "rule imposes substantive burdens, encodes a substantive value judgment, trenches on substantial private rights or interests, or otherwise alters the rights or interests of parties, it is not procedural for purposes of the section 553 exemption." *Am. Fed'n of Lab. & Cong. of Indus. Orgs.*, 57 F.4th at 1034-35.

The elimination of the opportunity to appeal simply delineated the way the Center and other complainants "present[ed] themselves or their viewpoints to" the Office. *See, e.g., Inova Alexandria Hosp. v. Shalala*, 244 F.3d 342, 349-50 (4th Cir. 2001) (affirming dismissal of hospital's notice and comment challenge to a rule that permitted Provider Reimbursement Review Board to dismiss untimely appeals of Medicare reimbursement challenges, reasoning that the

challenged provision "was a procedural rule for handling appeals" and did not alter the substantive standard applied to such challenges). Contrary to Plaintiffs' assertions, it did not eliminate the right of complainants to "present their viewpoints to the Department in connection with the termination of an investigation entirely." Pls.' Opp. at 32.

Rather, it is precisely the type of procedural rule that is exempted from the APA's notice and comment requirement. *See e.g., Am. Fed'n of Lab.*, 57 F.4th at 1034; *Nat'l Sec. Counselors*, 931 F. Supp. 2d at 106-07 (concluding that, although potentially burdensome, agency's provision governing the Freedom of Information Act ("FOIA") fee structure imposed in connection with mandatory declassification review is a procedural rule that does not adversely affect "those interests ultimately at stake in the agency proceeding"); *Pub. Citizen v. Dep't of State*, 276 F.3d 634, 641 (D.C. Cir. 2002) (holding that because the agency's "date of request cut-off" policy applied to all FOIA requests, making no distinction between requests on the basis of subject matter, it clearly encodes no substantive value judgment, and therefore was properly promulgated without notice and comment) (cleaned up).

Plaintiffs' attempt to liken the Office's elimination of the right to appeal to a National Labor Relations Board ("NLRB") rule that delayed certification of election results, which the D.C. Circuit recently determined was a substantive rule rather than a procedural one, fails. *See Am. Fed'n of Lab.*, 57 F.4th at 1038-39. The NLRB rule prevented certification of union election results until all objections and concerns related to the election were resolved, resulting in delays that could last years. *Id.* An employer does not have a legal duty to bargain with a union until the NLRB certifies that the union has won an election. *Id.* Thus, the NLRB's rule affected the rights of the employees who voted to form that union, by preventing them from having their chosen representative bargain with their employer. *Id.* Here, the Office's elimination of the right to appeal

does not impact the substantive rights of the complainant. The complainant is, at all times, free to file a private suit against the allegedly discriminating institution. And Plaintiffs may be able to refile their complaint under 110(h) after the lawsuit concludes. Accordingly, as explained above and in their motion to dismiss, whether the Case Processing Manual contains a right to appeal the Office's dismissal of an administrative complaint is a procedural rule, and not subject to the notice and comment requirement. The Court should therefore dismiss Count II.

### III. Plaintiffs Lack Standing to Bring Their Due Process Challenge and the Complaint Fails to Allege a Violation of Due Process Because the Office's Regulations Do Not Create Constitutionally Protected Interests in Investigations by the Office and They Have Not Alleged a *Mathews* Violation

For the same reasons discussed *supra* § II and in the motion to dismiss, Plaintiffs lack standing to bring a Fifth Amendment claim in Count III. The Complaint seeks as a remedy for Count III a declaration that eliminating the November 2018 appeal rights violated the Due Process Clause and an injunction prohibiting the Office from removing the appeal rights provided by the November 2018 CPM. Compl. ¶ 118(f), (g). As explained above, because the 2018 Case Processing Manual didn't give them appeal rights for the dismissal under § 110(h), the class action provision, their injury would not be redressed by ordering the Office to follow the 2018 Case Processing Manual. And to the extent they now pivot to seek an entirely different type of relief (what they describe as "a right to participate in the process at all, either before or after the Department's termination of its investigation," Pls.' Opp. at 34), their Complaint contains no allegations that such relief would redress Plaintiffs' alleged injuries with regard to the administrative complaint against University of Pennsylvania or any others.

Even if there were standing, the Office's regulations and Case Processing Manual do not create constitutionally cognizable interests of the nature that Plaintiffs assert. Plaintiffs argue that, under the Supreme Court's expansive view of liberty interests, espoused in *Board of Regents of*

- 15 -

*State Colleges v. Roth*, 408 U.S. 564, 577 (1972), they have the right to require the Office carry out its statutory duties. Pls.' Opp. at 34. Plaintiffs are wrong.  In *Women's Equity*, 906 F.2d at 752, the D.C. Circuit rejected the argument that the Office's purported shortcomings in responding to Title IX complaints violated the Fifth Amendment by following its prior decision in *Council of and for the Blind*, which it described as holding "that an agency's failure to process discrimination complaints in the manner required by federal statutes and regulations does not deprive complainants of constitutional rights." Otherwise, "court[s] would be swamped with constitutional claims because every agency deviation from the statutory norm would raise constitutional questions." *Id*. (quoting *Council of and for the Blind*, 709 F.2d at 1534).

Plaintiffs attempt to distinguish *Women's Equity* (but not *Council of and for the Blind*) on the basis that, by the time of the final decision, those plaintiffs were merely challenging the way that the federal defendants carried out their duties, while "Plaintiffs are challenging [the Office's] deliberate non-enforcement of Plaintiffs' discrimination claim."  Pls.' Opp. at 35. But in Count III, unlike Count I, Plaintiffs are not challenging the substance of the Office's decision to dismiss – their Complaint alleges that the "elimination of the Section 307 appeal right in the November 2018 Manual violated the Due Process Clause." Compl. ¶ 118(f). The Office's changes to the Case Processing Manual's appeal provisions simply reflect the need to manage its caseload, which is within its discretionary authority, and are akin to the questions about "the process used by an agency to investigate a complaint" (Pls.' Opp. at 35) raised in *Women's Equity*. There is no distinction.

Moreover, that purported distinction does not address the threshold legal holding of the D.C. Circuit in *Council of and for the Blind* that parties in Plaintiffs' position do not have a liberty or property interest in the "right to administrative assistance in the vindication of underlying,

- 16 -

fundamental statutory and constitutional interests." 709 F.2d at 1533 (quoting *Francis-Sobel v. University of Maine*, 597 F.2d 15, 18 (1st Cir. 1979)). There is no liberty or property interest at stake regarding administrative enforcement of these civil rights laws because an "agency's failure to process [individuals'] complaints does not extinguish their statutory rights…, it merely denies them the assistance of the agency in vindicating those rights." *Women's Equity*, 906 F.2d at 752 (quoting *Council of and for the Blind*, 709 F.2d at 1533-34) (cleaned up). Plaintiffs may vindicate their rights by filing a lawsuit against the university they believe violated their Title VI rights. Whether the Office provides for internal appellate review of its decision to continue to investigate a claim of discrimination (or not), therefore, ultimately has no bearing on Plaintiffs' "opportunity to be heard." *See, e.g., Council of and for the Blind*, 709 F.2d at 1533-34 (internal quotations omitted).

Finally, Plaintiffs also fails to state a claim because they do not sufficiently allege that due process entitles them to an administrative appeal of some or all of the Office's decisions. Due process is not a concept that is "unrelated to time, place and circumstances" but instead is "flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). Hence, the form of notice and hearing required in each circumstance requires a balancing of the competing public and private interests involved. "Under the *Mathews* balancing test, a court evaluates (A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake." *Nelson v. Colorado*, 581 U.S. 128, 135 (2017).

A plaintiff cannot win a *Mathews* claim by alleging that its case would have turned out differently if more process had been provided in its case. *Mathews* looks at systems. Rather than address whether complainants have an adequate opportunity to be heard, considering both the

- 17 -

entire Case Process Manual and complainants' private right of action against allegedly discriminating institutions, Plaintiffs allege that due process requires that parties be given an opportunity to be heard on the specific question of whether the Office's closure of an investigation was justified. Compl. ¶ 116. They make no effort to address how much risk there is of error using the current procedures, how much their proposed additional process would reduce that risk, and how much time and resources it would take the Office to implement the additional process for the more than 20,000 complaints received by the Office every year. The Complaint's allegations are conclusory and insufficient to state a claim that removal of this specific provision violated Plaintiffs' due process rights. *Iqbal*, 556 U.S. 662, 678 (2009).

The Court should dismiss Count III because Plaintiffs still maintain the ability to file their administrative complaints with the Office and seek judicial redress for those complaints against the educational institution, regardless of how the Office handles them. Thus, Plaintiffs have not alleged they have a constitutionally cognizable interest or been provided insufficient process under *Council of and for the Blind*, *Women's Equity*, and *Mathews*.

* * *

The parallel private Title VI litigation against the University of Pennsylvania proceeds apace.  The Office continues to investigate over one hundred administrative complaints from around the country that colleges and universities (as well as school districts) are violating Title VI because of differential treatment or the existence of a hostile environment due to students' shared ancestry, including antisemitism. The Office has and will continue to enter into robust voluntary resolution agreements with schools to ensure their compliance with Title VI, and then monitor to ensure the agreements are being followed. The Office's discretionary decision to dismiss Plaintiffs' administrative complaint against the University of Pennsylvania when the same system-

wide allegations were pending before a federal court should not be understood as in any way condoning the antisemitic actions alleged by Plaintiffs in their Complaint and the additional factual allegations made by Plaintiffs in their response. Instead, it is a reflection of the shared enforcement of Title VI between the Office and individuals serving as private Attorneys General to promote efficient use of scarce resources.

## CONCLUSION

For these reasons, Plaintiffs' complaint should be dismissed in its entirety.

Dated: January 17, 2025
Washington, D.C.

Respectfully submitted,

BRIDGET M. FITZPATRICK
D.C. Bar No. 474946
Acting United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By: */s/ Brenda González Horowitz*
BRENDA GONZÁLEZ HOROWITZ
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2512

*Attorneys for the United States of America*